Vince EVANS, Plaintiff–Appellant,

v.

Edward M. EINHORN, Defendant–Appellee.

No. 87–2817.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1988.

Decided July 11, 1988.*

* This was issued as an unpublished order on July 11, 1988 and the court *sua sponte* now issues it as a published opinion.

Solomon I. Hirsh, Chicago, Ill., for plaintiff-appellant.

Synde B. Keywell, Katten Muchin & Zavis, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr., and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

PER CURIAM.

Vince Evans appeals the dismissal by the district court of his claim against Edward Einhorn under the Illinois Wage Payment and Collection Act, Ill.Rev.Stat. ch. 48, ¶ 39m–1–15 (1986). The state law action against Einhorn was a pendent claim to a suit brought by Evans in federal court against his former employer, the Chicago Football Franchise Limited Partnership (CFFLP) and Edjer Corporation, the corporate general partner of CFFLP, under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). Einhorn is an officer and agent of the Edjer Corporation. The sole issue on appeal is whether the district court erred when it determined that Evans' state law claim against Einhorn was preempted by section 301(a) of the LMRA.

The district court correctly stated that if appellant's state law claim is, in fact, a suit to enforce a labor arbitration award, it is preempted by section 301(a) of the LMRA.

On appellee's motion to dismiss, the district court identified the key question as "whether Evans' use of a state statute to collect a labor arbitration award from an officer of his employer is a straightforward § 301 breach of collective bargaining [agreement] claim." After a thorough analysis, the district court held that "Evans' state law claim is nothing more than an attempt to enforce a federal labor arbitration award rendered pursuant to the provisions of a collective bargaining agreement." We believe the district court properly characterized appellant's state law claim, and correctly determined that it is preempted by section 301(a) of the LMRA.[1] Accordingly, we affirm on the basis of the district court's opinion, a copy of which is attached to this opinion as an appendix.

## APPENDIX

In the United States District Court

for the Northern District of Illinois

Eastern Division

Vince Evans, Plaintiff,

v.

The Chicago Football Franchise Limited Partnership, an Illinois Partnership; Edjer Corporation, an Illinois corporation; Edward M. Einhorn and others unnamed as officers and agents of Edjer Corp.; The United States Football League, a voluntary association; and The Chicago USFL Limited Partnership, an Illinois partnership, Defendants.

No. 86 C 10225

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

The plaintiff, Vince Evans, has brought suit against The Chicago Football Fran-

---

1. Subsequent to oral argument, appellant, pursuant to Circuit Rule 28(i), brought to our attention the recent decision of the United States Supreme Court in *Lingle v. Norge Div.*, — U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). We are aware of that decision but do not consider it controlling in this case. *Lingle* involved a fact situation wherein a discharged employee was presented with a choice of remedies between binding arbitration under a collective

bargaining agreement and a cause of action for retaliatory discharge under a state workers' compensation statute. In this case, plaintiff-appellant attempts to use the state forum to enforce a labor arbitration award that arose from the arbitrator's interpretation of a collective bargaining agreement. As such, it is squarely within the scope of the section 301(a) jurisdiction identified by the district court.

chise Limited Partnership, Edjer Corporation, Edward M. Einhorn as an officer and agent of Edjer Corporation, The United States Football League, and The Chicago USFL Limited Partnership to enforce an arbitration award. The only remaining defendant is Edward M. Einhorn.[1]

Presently pending before the Court is a motion brought by the remaining defendant pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the plaintiff's complaint with respect to himself for failure to state a claim upon which relief can be granted. As with all such motions, the Court accepts as true all well-pled facts and views all allegations in the complaint in the light most favorable to the plaintiff. *Wilson v. Harris Trust & Savings Bank,* 777 F.2d 1246, 1247 (7th Cir.1985).

## II. FACTS

On November 14, 1983, the plaintiff, Vince Evans, a professional football player who resides in Denver, Colorado, entered into a four year contract to play professional football for the United States Football League's ("USFL") franchise in Chicago. The United States Football League Players Association ("Players Association") is the certified collective bargaining representative of the professional football players employed by USFL employers.

The USFL and the Players Association are and at all relevant times have been parties to a collective bargaining agreement. The agreement provides in part for the resolution of disputes between the parties through final and binding arbitration.[2]

At the time Vince Evans entered into the contract, the Chicago USFL Limited Partnership, an Illinois limited partnership, owned the rights to the USFL franchise in Chicago. The Chicago USFL Limited Partnership and the players it employed were covered by and subject to the terms of the USFL/Players Association collective bargaining agreement. On March 30, 1984, the Chicago USFL Limited Partnership transferred its interest in the Chicago USFL franchise to The Chicago Professional Football Holding Company, Inc. The transferee was a New York corporation of which the USFL, as agent for its member teams, was the sole shareholder. Included in the transfer were the Chicago USFL Limited Partnership's rights and obligations under the Evans contract.

On May 10, 1984, the USFL transferred its interest in The Chicago Professional Football Holding Company, Inc. to Edjer Corporation, an Illinois corporation. Included in the transfer were The Chicago Professional Football Holding Company's rights and obligations under the Evans contract. Edjer Corporation is the general partner of the Chicago Football Franchise Limited Partnership, an Illinois partnership which is franchised by the USFL to field a football team in Chicago. Edward M. Einhorn is an officer of Edjer Corporation.

The Evans contract provided for deferred compensation ranging in installments of $50,000 to $88,000, beginning January 3, 1992, and continuing annually until January 3, 2027. The contract also provided for a financial guaranty, described by the parties as a surety, which was to be purchased

---

1. On April 6, 1987, a default judgment was entered against two defendants, the Chicago Football Franchise Limited Partnership and Edjer Corporation. The default judgment was entered pursuant to Rule 55(b) of the Federal Rules of Civil Procedure because these defendants failed to answer or otherwise plead to the plaintiff's complaint after having been properly served with process and having appeared by counsel. A third defendant, the United States Football League, was voluntarily dismissed by the plaintiff on February 6, 1987, pursuant to Fed.R.Civ. P. 41(a)(1). A fourth defendant, The Chicago USFL Limited Partnership, was dismissed *sua sponte* by the Court on July 13, 1987, pursuant to Fed.R.Civ.P. 4(j).

2. "Article VIII: *Non–Injury Grievance:*

 Section 1. *Definition:*
 Any dispute (hereinafter referred to as a "grievance") involving the interpretation or application of, or compliance with, any provision of this Agreement, the USFL Player Contract, the USFL Uniform Player Contract, and any provision of the USFL Constitution or USFL Operations Manual pertaining to terms and conditions of employment of USFL players, will be resolved exclusively in accordance with the procedure set forth in this Article ..."

from Lloyds of London to guarantee the deferred compensation provision in the Evans contract.[3] The Chicago Football Franchise Limited Partnership, the Chicago Professional Football Holding Company, and the Chicago USFL Limited Partnership all failed to purchase a surety as required by the contract.

On May 10, 1985, the Players Association filed a grievance on behalf of Evans pursuant to the provisions of the collective bargaining agreement. The parties exhausted the provisions of the contractual grievance procedure, and on October 8, 1985, the Players Association and Evans appealed his grievance to arbitration.

On September 18, 1986, arbitrator John E. Dunsford conducted a hearing into the Evans grievance. The Players Association appeared on behalf of Evans and The Chicago Football Franchise Limited Partnership was represented by counsel. On October 1, 1986, arbitrator Dunsford granted Evans' grievance and awarded him $1,302,-000.00 plus an additional amount sufficient to cover Evans' tax liability on the award to leave him an after tax net of $1,302,-000.00.[4] The arbitrator's award was made in favor of Vince Evans and against the Chicago Football Franchise Limited Partnership.

3. "Paragraph 29—*Financial Guaranty*

As set forth in paragraph 28 above, the Club shall provide a Financial Guaranty ("Surety") to be acquired and owned by the Player (the premium cost of which is to be reimbursed to the Player by the Club) that in accordance with its terms assures the Player of payment from the Surety for the deferred compensation payments in the amount and at the times as set forth in paragraph 28 and/or the amounts, if any is still owing, in base salary payments as set forth in paragraph 25. The terms and provisions of said Surety shall be subject to the approval of the Player (said approval shall not be unreasonably withheld)."

4. "*Award*

The Chicago Football Franchise Limited Partnership violated its contract with Vince Evans by failing to provide a financial guarantee to assure the player the payment of his salary and deferred compensation. As a remedy for this

## III. COUNT ONE

In Count One Evans seeks to enforce the arbitration award under § 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a).[5] In support of his motion to dismiss, Einhorn argues that he is not named as a defendant in Count One of the complaint. After arguing that the complaint is ambiguous, Einhorn cites to several admissions in the plaintiff's memorandum in opposition to defendants' motion to dismiss that indicate that the plaintiff did not intend to name Einhorn as a defendant in Count One of the complaint. Excerpts from the plaintiff's memorandum follow:

> In Count I of his complaint, Evans sues CFFLP [Chicago Football Franchise Limited Partnership] and the other institutional defendants to enforce an arbitration award pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). In Count II Evans *adds Einhorn* in a claim for payment of wages under the Illinois Wage Payment and Collection Act, *Ill.Rev.Stat.* Ch. 48 ¶ 39m–1 *et seq.*

(Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss at 1–2; emphasis added).

breach, the Chicago Football Franchise Limited Partnership shall pay the Grievant the sum of $1,302,000, plus an additional amount sufficient to cover the tax liability of the Grievant in a manner calculated to leave him an after-tax sum of $1,302,000. This award shall be effective 14 days after its receipt by the parties, during which period the Chicago Football Franchise Limited Partnership and the Grievant are free to work out an alternative resolution of the dispute."

5. "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The references to § 301 and § 301(a) of the LMRA are used interchangeably in this opinion.

Although Einhorn if not at present named in Count I of Evan's complaint . . .

(*Id.* at 5).

Count I of Evans's complaint only seeks enforcement of the arbitration award against CFFLP and Edjer.

(*Id.* at 7).

The Court agrees with both parties that a careful reading of the complaint reveals that Einhorn is not named as a defendant in Count I. Because Einhorn is not now, nor has he ever been, a defendant in Count I, his motion to dismiss Count I is denied as moot.

## IV. COUNT TWO

In Count Two Evans seeks to use the Illinois Wage Payment and Collection Act, Ill.Rev.Stat., ch. 48, ¶ 39m–(1–15), to collect from Einhorn the amount owed Evans by the Chicago Football Franchise Limited Partnership pursuant to the arbitration award.

Evans claims that Einhorn is an employer within the meaning of the Illinois Act, that the arbitration award constitutes wages and/or final compensation within the meaning of the Act, and that Einhorn willfully violated the provisions of the Act. Evans asserts that with these statutory factors established, Einhorn is personally liable for the amount of the arbitration award pursuant to the Illinois statute.

Einhorn moves to dismiss this count under Fed.R.Civ.P. 12(b)(6). Einhorn argues that Count II is an action arising out of the breach of a collective bargaining agreement, and that Evans' claim under Illinois state law has been preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Therefore, he argues Evans has failed to state a claim upon which relief can be granted.

Evans responds that the collection of an arbitration award is totally independent of the collective bargaining agreement which provided for the arbitration process. Evans divorces the arbitration award from the entire process leading up to the award and claims that the collection of the award, unlike the process leading up to the award, is a proper subject for state regulation.

## A. PREEMPTION DOCTRINES

The Supreme Court has recently explained how the preemptive scope of § 301 is determined:

Congress' power to pre-empt state law is derived from the Supremacy Clause of Art. VI of the Federal Constitution. *Gibbons v. Ogden,* 9 Wheat. 1, 6 L.Ed. 23 (1824). Congressional power to legislate in the area of labor relations, of course, is long established. See *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937). Congress, however, has never exercised authority to occupy the entire field in the area of labor legislation. Thus the question whether a certain state action is preempted by federal law is one of congressional intent. " 'The purpose of Congress is the ultimate touchstone.' " *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978), quoting *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963).

Congress did not state explicitly whether and to what extent it intended § 301 of the LMRA to preempt state law. In such instances courts sustain a local regulation "unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." *Malone v. White Motor Corp.,* 435 U.S., at 504, 98 S.Ct., at 1190.

*Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 1909–1910 [85 L.Ed.2d 206] (1985) (footnote omitted). Paraphrasing the Supreme Court in *Lueck,* the question posed here is whether this particular Illinois law, as applied, would frustrate the federal labor-contract scheme established in § 301.

There are two federal labor statutes that provide the major sources of federal preemption in the labor relations area—§ 8 and § 9(a) of the National Labor Relations

Act ("NLRA"), 29 U.S.C. § 158 and § 159(a), and § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). The preemption principle flowing from the NLRA, the so-called *Garmon* rule, protects the primary jurisdiction of the National Labor Relations Board. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, [3 L.Ed.2d 775] (1959). The *Garmon* preemption doctrine is not applicable to the instant case. It is the other primary source of federal preemption, § 301 of the LMRA, that must be analyzed to resolve the question raised by Einhorn's motion to dismiss.

The preemptive effect of § 301(a) was first recognized by the Supreme Court in *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912 [1 L.Ed.2d 972] (1957). After analyzing the intent of Congress, the Supreme Court held that with the enactment of § 301(a) Congress intended to create a uniform body of federal law to govern the enforcement of collective bargaining agreements. *Id.*, 353 U.S., at 455, 77 S.Ct., at 917. With regard to arbitration provisions in collective bargaining agreements, the Supreme Court agreed with certain lower courts that had held that § 301(a) "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements." *Id.*, 353 U.S., at 450–451, 77 S.Ct., 914–915. The Supreme Court further held that:

> [f]ederal interpretation of the federal law will govern, not state law. [citation omitted] But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. [citation omitted] Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights.

*Id.*, 353 U.S., at 457, 77 S.Ct., at 918.

The impact of § 301 was clarified by two other Supreme Court decisions—*Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519 [7 L.Ed.2d 483] (1962) and *Local 174, Teamsters, Etc. v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571 [7 L.Ed.2d 593] (1962). *Charles Dowd Box* held that there is concurrent state and federal court jurisdiction of § 301 lawsuits. *Lucas Flour* held that no matter in which court system an action under § 301 is brought, the federal common law created by Congress with the passage of § 301 must be applied. *Lucas Flour* was a suit by an employer claiming that a strike by the union was a violation of the collective bargaining agreement provision requiring binding arbitration over disputes concerning the termination of employees. The Supreme Court stated, "[w]e hold that in a case such as this, incompatible doctrines of local law must give way to principles of federal labor law." *Id.*, 369 U.S., at 102, 82 S.Ct., at 576.

The Supreme Court also continued its analysis of Congressional intent begun in *Lincoln Mills:*

> [t]he dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of Lincoln Mills, requiring issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy. More important, the subject matter of § 301(a) "is peculiarly one that calls for uniform law." *Pennsylvania R. Co. v. Public Service Comm.*, 250 U.S. 566, 569, 40 S.Ct. 36, 37 [64 L.Ed. 1142]; see *Cloverleaf Butter Co. v. Patterson*, 315 U.S. 148, 167–169, 62 S.Ct. 491, 501–503 [86 L.Ed. 754].

> . . . .

> The importance of the area which would be affected by separate systems of substantive law makes the need for a single body of federal law particularly compelling. The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to

promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy. With due regard to the many factors which bear upon competing state and federal interests in this area, [citations omitted] we cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules.

*Lucas Flour*, 369 U.S., at 103–104, 82 S.Ct., at 576–577.

Recently the Supreme Court has expanded the preemptive effect of § 301 to include state law tort claims "inextricably intertwined with consideration of the terms of the labor contract." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 1912 [85 L.Ed.2d 206] (1985). *See also, IBEW, AFL–CIO v. Hechler,* —— U.S. ——, 107 S.Ct. 2161 [95 L.Ed.2d 791] (1987) and *Caterpillar, Inc. v. Williams,* —— U.S. ——, 107 S.Ct. 2425 [96 L.Ed.2d 318] (1987). These three recent Supreme Court decisions do not constitute a repudiation of the *Lincoln Mills/Lucas Flour* preemption analysis. Rather, all three recognize that the preemptive effect of § 301 is being expanded beyond suits alleging breaches of collective bargaining agreements to include state tort claims.

> If the policies that animate § 301 are to be given their proper range, however, the preemptive effect of § 301 must extend beyond suits alleging contract violations.

*Allis–Chalmers Corp. v. Lueck*, 105 S.Ct., at 1911.

> The ordinary § 301 case is a contract claim in which a party to the collective-bargaining agreement expressly asserts that a provision of the agreement has been violated. See, *e.g., Lucas Flour*, 369 U.S., at 104, 82 S.Ct., at 577 (claim by employer that strike by union violated provision of collective-bargaining agreement). In *Allis–Chalmers*, however, the Court considered an employee's state-law tort action against his employer for bad-faith handling of disability-benefit pay-

ments due under a collective-bargaining agreement, and concluded that the interests supporting the uniform interpretation of collective-bargaining agreements under federal law apply equally in the context of certain state-law tort claims. *IBEW, AFL–CIO v. Hechler*, 107 S.Ct., at 2165–2166.

> Section 301 governs claims founded directly on rights created by collective-bargaining agreements, *and* also claims "substantially dependent on analysis of a collective-bargaining agreement." [Citing, *IBEW, AFL–CIO v. Heckler* and *Allis–Chalmers v. Lueck* ].

*Caterpillar Inc. v. Williams*, 107 S.Ct., at 2431 (emphasis added).

There is no suggestion in any of these three recent Supreme Court cases that the *Lincoln Mills/Lucas Flour* preemption analysis for breaches of collective bargaining agreements has been changed. In fact, all three cases clearly differentiate between the standard § 301 preemption analysis, and the newer *Allis–Chalmers* analysis for preemption of state law tort claims. Analysis of the preemptive effect of § 301 should only be begun after the correct analytical framework has been selected.

The Court has not found any reported decision analyzing the preemptive effect of § 301 on state statutes used to collect arbitration awards rendered pursuant to the terms of a collective bargaining agreement. Several decisions do, however, involve attempts to use the Illinois Wage Payment and Collection Act to secure benefits due under collective bargaining agreements.

In *National Metalcrafters v. McNeil*, 784 F.2d 817 (7th Cir.1986), an employer sued to enjoin the administrator of the Illinois Act from using the state law to force the employer to pay vacation benefits allegedly due under a collective bargaining agreement. The Seventh Circuit Court of Appeals held the Illinois Act, as applied, preempted by both § 301 of the LMRA and § 8 of the NLRA. The decision does not, however, indicate that arbitration proceedings between the employer and the union had taken place. Thus, the role of arbitra-

tion in the scheme of federal labor law was not an issue before the Seventh Circuit. This Court does not view *National Metalcrafters* as direct authority on the issues presented in the instant case. This Court was, however, heartened by Judge Posner's comment on the lack of controlling authority in this area: "[a]lthough virtually every state has a wage payment act of the same general sort as Illinois', and these acts seem rich in potential for conflict with the federal labor and employee financial security laws, few reported cases deal with these acts and none controls the issues in this case." *Id.*, at 820.

In *Upholsterer's International Union v. Pontiac Furniture*, 647 F.Supp. 1053 (C.D. Ill.1986), the union brought suit under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), § 301(a) of the LMRA, and the Illinois Wage Payment and Collection Act to collect benefits due under a collective bargaining agreement. Although the district court held that the union's state law claims against the corporate employer and an officer were not barred by ERISA, the Court raised the possibility, without deciding, that the claims were barred by § 301. As with *National Metalcrafters,* there is no discussion in the opinion of any arbitration provisions in the collective bargaining agreement. And *see In Re Faber,* 52 B.R. 563 (N.D.Ill.1985) (upholding a claim based upon the Illinois Wage Payment and Collection Act against an officer of the employer for benefits due under a collective bargaining agreement without any discussion of the preemptive effect of federal labor statutes).

Evans argues that the *Allis–Chalmers* analysis is proper in the instant case because he views the Illinois Wage Payment and Collection Act as vesting him with a state law right akin to a state law tort right. To decide whether Evans is correct it is necessary to examine the role of arbitration in the scheme of federal labor regulation.

## B. ROLE OF ARBITRATION IN FEDERAL LABOR POLICY

The Supreme Court beginning with its decision in *Lincoln Mills* has recognized the central importance of labor-management arbitration procedures to the national labor policy instituted by the Congress. Discussing the legislative history of § 301 of the LMRA, the Supreme Court per Mr. Justice Douglas found that "the entire tenor of the history indicates that the agreement to arbitrate grievance disputes was considered as *quid pro quo* of a no-strike agreement." *Lincoln Mills,* 353 U.S., at 455, 77 S.Ct., at 917. Indeed, *Lincoln Mills* itself upheld the power of a federal district court under § 301 to compel an employer to arbitrate grievances in accordance with a collective bargaining agreement.

Three later Supreme Court decisions, *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343 [4 L.Ed.2d 1403] (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347 [4 L.Ed.2d 1409] (1960); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358 [4 L.Ed.2d 1424] (1960), the "Steelworker's Trilogy", reinforced the role of arbitration in the national labor policy. In *American Mfg. Co.* the Supreme Court forbade the judiciary from usurping the role of arbitrators by determining "the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements ..." *American Mfg. Co.,* 363 U.S., at 569, 80 S.Ct., at 1347. The Supreme Court noted:

> [s]ection 203(d) of the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U.S.C. § 173(d), states, "Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement...." That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.

*Id.,* 363 U.S., at 566, 80 S.Ct., at 1345–1346.

*Warrior & Gulf Navigation* was another action to compel arbitration. The Su-

preme Court upheld the collective bargaining agreement's arbitration procedure and commented extensively on the importance of arbitration:

[t]he present federal policy is to promote industrial stabilization through the collective bargaining agreement. [citation omitted] A major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement.

. . . . .

. . . arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself.

. . . . .

But the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.

*Id.,* 363 U.S., at 578–581, 80 S.Ct., at 1350–1352 (footnotes omitted).

In the last of the trilogy, the Supreme Court upheld the power of the courts pursuant to § 301 to *enforce* arbitration awards made under the provisions of collective bargaining agreements. The Supreme Court cited to *Textile Workers Union of America v. Cone Mills Corp.,* 268 F.2d 920 (4th Cir.1959) *cert. denied* 361 U.S. 886 [80 S.Ct. 157, 4 L.Ed.2d 121] (1959) as persuasive authority for its decision. The *Cone Mills* court found that the courts' power under § 301 to enforce arbitration awards followed naturally from the logic of *Lincoln Mills:*

[u]nder the Lincoln decision we are no longer inhibited by the old rule that the courts will not give specific performance to agreements to arbitrate. By parity of reasoning the court should enforce arbi-

tration awards, for this is but a short step in the development of a substantive federal law to meet the problems as they arise in this area. If arbitration can be specifically enforced, the court should have power to afford complete relief by enforcing the award.

*Cone Mills,* 268 F.2d, at 925.

Recognition of the role of arbitration in our national labor policy, illustrated by the above quotations, has uniformly led courts to conclude that actions to enforce arbitration awards entered as a result of procedures mandated by collective bargaining agreements are § 301 claims. *E.g., Miller Brewing Co. v. Brewery Workers Local Union No. 9,* 739 F.2d 1159 (7th Cir.1984) *cert. denied* 469 U.S. 1160 [105 S.Ct. 912, 83 L.Ed.2d 926] (1985) ("The union sought enforcement of the arbitrator's award under both the Arbitration Act, which has its own standards for the validity of arbitration awards, see 9 U.S.C. § 11, and § 301 of the Taft–Hartley Act, which is the source of federal common law principles governing the validity of labor arbitration awards." *Id.,* at 1162); *Diaz v. Schwerman Trucking Co.,* 709 F.2d 1371 (11th Cir.1983) ("Since the employees' suit [to enforce an arbitration award] is clearly founded upon a breach of the collective bargaining agreement and involves wages . . . we affirm the district court's holding that subject matter jurisdiction existed under section 301." *Id.,* at 1374); and *Chauffeurs, Teamsters, Etc. v. Jefferson Trucking,* 628 F.2d 1023 (7th Cir.1980) *cert. denied* 449 U.S. 1125 [101 S.Ct. 942, 67 L.Ed. 2d 111] (1981).

*Jefferson Trucking* was an action by the union to enforce an arbitration award made pursuant to the provisions of a collective bargaining agreement. The Seventh Circuit Court of Appeals analyzed prior precedent as follows:

[t]his action was brought under Section 301 of the LMRA, which provides that suits for a violation of the collective bargaining agreement between an employer and union may be instituted in any United States District Court having jurisdiction of the parties. 29 U.S.C. § 185(a).

Since the decision of the Supreme Court in *Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), it is settled that in the field of labor arbitration the governing law is a body of federal law to be fashioned by the federal courts under Section 301(a) of the LMRA. *Id.* at 456–457, 77 S.Ct. at 917–918. Indeed, in *Lincoln Mills* and its progeny the expansive role of the LMRA and the substantive law to be fashioned under it became manifest. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), is the most directly pertinent, for in that case it was held that the federal courts have the power under Section 301(a) of the LMRA to compel specific performance of labor arbitration awards without reviewing the merits of such awards. These cases demonstrate that Section 301 confers the jurisdictional basis and corresponding source of law governing this action.

*Jefferson Trucking Co.,* 628 F.2d, at 1025.

The decisions that have analyzed the preemptive effect of § 301 in actions to enforce arbitration awards have also uniformly held that as in any breach of collective bargaining agreement case, § 301 preempts state law. In *Samples v. Ryder Truck Lines, Inc.,* 755 F.2d 881 (11th Cir. 1985), the plaintiff employee argued that he had brought a " 'straightforward state court action to enforce an arbitration award.' " *Id.* at 884. The Eleventh Circuit Court of Appeals held that the employee's state law action was preempted by § 301:

[t]he character of such a claim further compels a finding that only federal law should apply. The danger that incompatible state law may disrupt the collective bargaining process is no less likely for suits to enforce arbitration than for any other attempt to force compliance with the terms of the collectively bargained grievance procedure. In addition, there is little likelihood that federal preemption will constitute undue interference with rights "rooted in local feeling." Samples' claim owes its existence not to the workings of state contract or arbitration

law, but rather to the workings of the complex regulatory scheme embodied in the NLRA. For these reasons, we find that Samples' potential state law claims have been preempted by section 301(a) of the LMRA.

*Id.,* at 884–885. *Accord, City of Saginaw v. Service Employees International Union, Local 446–M,* 720 F.2d 459 (6th Cir. 1983) ("Ordinarily, an action brought by a union against an employer to enforce an arbitration award rendered pursuant to a collective bargaining-agreement 'arises under' § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and thus falls within original federal-question jurisdiction under § 1331(a) or 28 U.S.C. § 1337. This is so even where the union pleads a cause of action based solely under state contract-law because the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Id.,* at 461–462 (citations omitted)). And *see Dreis & Krump Mfg. Co. v. International Association of Machinists,* 802 F.2d 247 (7th Cir.1986) ("The fact that Illinois may have decided not to apply portions of its arbitration statute to labor arbitration may signify nothing more than that suits to enforce labor arbitration under Illinois law are unimportant because of the preemptive effect of section 301." *Id.,* at 251).

There can be no doubt that if Evans' state law claim is, in fact, a suit to enforce a labor arbitration award, it has been preempted by § 301 of the LMRA.

### C. THE NATURE OF EVANS' STATE LAW CLAIM

Pursuant to the terms of the USFL/Players Association collective bargaining agreement, Evans and his union instituted a grievance alleging the violation of his individual player contract. The grievance was submitted to binding arbitration as required by the collective bargaining agreement and an award was rendered in Evans' favor. The terms of the collective bargaining agreement required Evans to arbitrate his grievance against his employer. Had

Evans not followed the collective bargaining agreement arbitration procedures, he would have had no maintainable action for breach of his individual player contract.

As discussed above, Evans has already received default judgments against the entity against which the arbitration award was rendered, The Chicago Football Franchise Limited Partnership, and against the corporate general partner of the limited partnership, Edjer Corporation. With Count II of his complaint, Evans seeks to collect that same arbitration award from Einhorn, an officer of Edjer Corporation, using the mechanism of the Illinois Wage Payment and Collection Act.

Evans rejects the idea that the standard § 301 breach of collective bargaining agreement analysis should apply to his state-law claim against Einhorn. Instead, he argues that the analysis set out in *Allis–Chalmers v. Lueck* applies.

To resolve this question the Court must decide whether Evans' use of a state statute to collect a labor arbitration award from an officer of his employer is a straightforward § 301 breach of collective bargaining claim, or whether it should be viewed as the assertion of an independent state law right. The Court is not, of course, bound by Evans' characterization of his claim. *Gibson v. A.T. & T. Technologies, Inc.,* 782 F.2d 686, 688 (7th Cir.1986) *cert. denied* [477 U.S. 905] 106 S.Ct. 3275 [91 L.Ed.2d 565] (1986); and *cf. Oglesby v. RCA Corp.,* 752 F.2d 272, 276 (7th Cir. 1985). The proper characterization of Evans' claim is a question for the Court.

Evans does not deny that the labor arbitration award lies at the core of his state law claim against Einhorn. In fact, Evans admits that all that remains of the collective bargaining agreement arbitration process is enforcement of the arbitration award. "All that remains now is collection of the arbitrator's award." (Plaintiff's

Memorandum in Opposition to Defendants' Motion to Dismiss at 8). The gravamen of Evans' complaint is an attempt to collect, i.e. enforce, a federal labor arbitration award. As with any arbitration award enforcement case, the plaintiff's goal is to secure for himself the benefits of the award. In the Court's view, the characterization of Evans' action does not depend from whom he seeks to collect his award.

The Court holds that Evans' state law action against Einhorn is nothing more than an attempt to enforce a federal labor arbitration award rendered pursuant to the provisions of a collective bargaining agreement. As such, Evans' state law claim under the Illinois Wage Payment and Collection Act against Einhorn has been preempted by § 301(a) of the Labor Management Relations Act of 1947.[6] The question of from whom an arbitration award can be collected falls within the federal common law governing enforcement of arbitration awards. The Court further holds that officer or other third-party liability for federal labor arbitration awards must be resolved by reference to the federal labor common law created by Congress with the enactment of § 301(a), and is not a subject which Congress intended to be left to state regulation. *See John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 548, 84 S.Ct. 909, 914 [11 L.Ed.2d 898] (1964) (federal law governs issues as to successor corporation's duty to honor arbitration provision contained in collective bargaining agreement between union and merged corporation in action brought under § 301(a)); *Laborers Clean–Up Contract v. Uriarte Clean–Up Service,* 736 F.2d 516, 523 (9th Cir.1984) and *Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105, 1109–1110 (9th Cir.1979) (federal law governs issues as to shareholder liability for contributions to employee benefit funds required by terms of collective bargaining agree-

---

**6.** The Supreme Court's recent decision in *Caterpillar, Inc. v. Williams,* —— U.S. ——, 107 S.Ct. 2425 [96 L.Ed.2d 318] (1987) is not to the contrary. The provisions of the USFL/Players Association collective bargaining agreement required the dispute over Evans' individual player contract to be submitted to binding arbitration.

Evans' suit to enforce and/or collect the arbitration award is a suit implicating the collectively bargained for right of arbitration. Unlike the facts of *Caterpillar, Inc. v. Williams,* Evans' complaint does directly rely on the collective bargaining agreement and asserts rights which are completely dependent upon that agreement.

**1256**

ments in actions brought under § 301(a)); and *cf. Alman v. Danin*, 801 F.2d 1, 3–4 (1st Cir.1986) (federal law governs issues as to shareholder liability for contributions to employee benefit funds due under collective bargaining agreement in action brought under ERISA). Because as properly characterized, Evans' state law claim is a straight forward § 301 breach of a collective bargaining agreement action, the preemption analysis of the Supreme Court in *Allis–Chalmers v. Lueck* and *IBEW, AFL–CIO v. Hechler* is inapplicable.

The Court believes that its holding as to the proper characterization of Evans' claim with the resulting application of § 301 breach of collective bargaining agreement preemption analysis, and its holding as to the application of federal labor common law to officer or other third-party liability are fully supported by the long line of Supreme Court precedent discussed above. Collective bargaining agreement arbitration requirements and their enforcement have been at the heart of most of the seminal Supreme Court labor law decisions. A uniform federal common law to resolve officer and third-party liability for labor arbitration awards is no less important to the national labor policy implemented by Congress than is the uniform federal law governing actions to compel arbitration, or the uniform federal law governing actions to enforce arbitration awards. Certainty and uniformity in the area of officer and third-party liability for labor arbitration awards are desirable because they will encourage labor and management to enter into collective bargaining agreements containing binding arbitration and no-strike provisions. State regulation of this subject area would erode the national labor policy particularly as applied to arbitral certainty.

## V. CONCLUSION

Defendant Edward M. Einhorn's motion to dismiss Count I of the complaint is denied because Einhorn is not named as a defendant in that Count. Einhorn's motion to dismiss Count II of the complaint as preempted by § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.

C. § 185(a), is granted. The Clerk of Court is directed to enter judgment in favor of the sole remaining defendant, Edward M. Einhorn, and against the plaintiff, Vince Evans.

ENTER:

/s/ Ilana Diamond Rovner

United States District Judge

Date: October 8, 1987