**Mitchell WILLIAMS, Plaintiff,**

v.

**UNITED STATES STEEL (USS), a division of USX Corporation, Defendant.**

No. 2:94 cv 342 JM.

United States District Court, N.D. Indiana, Hammond Division.

Feb. 22, 1995.

Rudy C. Kutansky, Stults Custer and Kutansky, Gary, IN, for plaintiff.

James E. McHie, McHie Myers McHie and Enslen, Hammond, IN, S.G. Clark, Pittsburgh, PA, for defendant.

## ORDER

MOODY, District Judge.

Mitchell Williams brought this lawsuit to enforce an arbitration award that his union secured on his behalf. Williams alleges that

United States Steel ["USS"] has not paid him all the money he is due under that arbitration award. Williams filed suit in state court. Relying on § 301 of the Labor Management Relations Act, which grants federal courts original jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization," *see* 29 U.S.C. § 185(a), USS removed Williams' case to this court. USS then moved for summary judgment pursuant to FED.R.CIV.P. 56, arguing primarily that Williams' case is time-barred because it was filed more than six months from when Williams' discovered USS's alleged wrongdoing. The court concludes that Williams' action is not time-barred. Nonetheless, for the reasons given below, USS's summary judgment motion is **GRANTED.**

## I.

The gravamen of summary judgment is that the movant must identify, and the non-movant fail to refute, undisputed facts entitling the movant to judgment as a matter of law. To determine whether this standard is met, the court views the facts presented and the reasonable inferences drawn from those facts "in the light most favorable to the nonmovant." *Dempsey v. Atchison, Topeka and Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir.1994). However, where a party fails to oppose a summary judgment motion

> the court will assume that the fact[s] as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy.

LOCAL RULE 56.1. "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that 'no reasonable jury could find for the non-moving party.' " *Dempsey,* 16 F.3d at 836 (citation omitted).

## II.

Because Williams failed to file a timely response to USS's summary judgment motion, the court accepts as undisputed the facts as established by the exhibits to USS's motion. Those facts are as follows.

USS placed a 30–pound weight restriction on Williams that prevented Williams from wielding the 80– to 120–pound jackhammers with which he earned his living. Williams' personal physician released Williams to return to work without restriction on May 1, 1991. Because of Williams' history of back problems, however, USS's doctor, Dr. Novack, nonetheless would not allow Williams to return to work without the 30–pound restriction.

In March, 1992, USS sent Williams' to the University of Illinois Hospital for an independent medical evaluation. Dr. Novack also sent the hospital a letter outlining Williams' history of back problems. On April 9, 1992, Dr. Goldberg, an orthopedic resident at the hospital, examined Williams and opined that Williams could return to work without restriction. Dr. Novack rejected this opinion, believing that Dr. Goldberg was not taking sufficient account of Williams' medical history. In a June, 1992 letter, Dr. Regan, a professor at the university hospital, addressed Dr. Novack's concerns about Williams' medical history. Dr. Regan again recommended that Williams be returned to work without restriction. Dr. Novack stuck to his view that the university doctors were not taking sufficient account of Williams' medical history.

Local # 1066 of the International United Steelworkers of America then filed a grievance on Williams' behalf and, pursuant to the union's collective bargaining agreement with USS, the matter proceeded to arbitration. The arbitrator characterized the grievance as stating:

> Management has me off work without proper and just cause on a 35 [sic] lb. weight restriction.
>
> *Remedy Requested:* Remove the weight restriction from my medical record. Return me back to work. Pay all monies lost until final settlement of this grievance.

The arbitrator found that:

> [R]eleases from personal physicians are no longer accepted ... unless they are supported by solid medical evidence. That evidence is provided by the independent medical evaluation in this case. This grievance will be sustained. Grievant shall

be made whole from all losses incurred since Dr. Goldberg released him to return to work without restriction on April 9, 1992.

The arbitrator's decision was issued on December 22, 1992. USS released Williams from the weight restriction on December 31, 1992. USS then calculated the backpay owed to Williams as a result of the restriction's imposition for the period from April 9, 1992 until December 31, 1992. In March, 1993, USS paid and Williams accepted that backpay.

Nonetheless, on December 2, 1994, Williams filed this lawsuit in state court. Williams' complaint alleges that the arbitration sought, *inter alia,* "payment of all wages lost as a result of the refusal to allow the plaintiff to return to work as of May 1, 1991 until final settlement of the grievance." Williams' complaint goes on to allege that the grievance was sustained as such but that USS only paid him backpay from April 9, 1992. Williams seeks additional backpay from the period May 1, 1991 until April 9, 1992.

Although not for the reason primarily relied upon by USS, these facts make it clear that USS is entitled to judgment as a matter of law in this case.

### III.

USS's primary argument for summary judgment is that Williams' lawsuit is time-barred by application to Williams' claim of the six-month limitations period announced in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). *DelCostello* is, however, not applicable.

#### A. *The nature of Williams' claim.*

Which limitations period applies to a particular § 301 action depends on the nature of the underlying claim. The norm for such cases is to apply the most analogous state-law limitation period. *Int'l Union of Elevator Constructors v. Home Elevator Co.,* 798 F.2d 222, 226 (7th Cir.1986). One exception to this norm is where, following an arbitration proceeding, an employee sues both his or her employer and his or her union. *See id.* at 225–26. Such cases are treated as hybrid actions because "[t]he suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement," whereas "[t]he suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act." *DelCostello,* 462 U.S. at 164, 103 S.Ct. at 2290. Only in such "hybrid cases" does *DelCostello* require imposition of a six-month limitations period. *Id.* at 169, 103 S.Ct. at 2293.

The essence of Williams' complaint is that he is due more under the arbitrator's award than USS has been willing to pay— that is, Williams seeks to enforce the arbitrator's award. Section 301 is the appropriate means for enforcement of such awards. *See Evans v. Einhorn,* 855 F.2d 1245, 1253 (7th Cir.1988) (adopting then District Judge Rovner's opinion that "[r]ecognition of the role of arbitration in our national labor policy ... has uniformly led courts to conclude that actions to enforce awards entered as a result of procedures mandated by collective bargaining agreements are § 301 claims"); *see also United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 595–96, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960) (accepting that "the District Court had jurisdiction to enforce an arbitration award under a collective bargaining agreement" under § 301). In fact, § 301 is the only means to enforce such awards, preempting similar state law claims. *See Evans,* 855 F.2d at 1246. Thus, as USS recognized when they removed Williams' complaint to this court, Williams' attempt to enforce his arbitration is very much a claim under § 301.

The question is whether Williams' attempt to enforce the arbitration award presents a "straightforward" § 301 claim or a *DelCostello* hybrid. The court has found no Seventh Circuit guidance on this point. The Eleventh Circuit has written in this regard, however; the court finds that circuit's reasoning instructive, even while finding its conclusion unpersuasive.

In *Samples v. Ryder Truck Lines, Inc.,* a truck driver was fired for purported dishon-

esty. 755 F.2d 881, 883 (11th Cir.1985). An arbitrator ruled that the driver was entitled to reinstatement if certain conditions were met. *Id.* Ultimately, the driver was not reinstated and he brought suit in state court. *Id.* The case was removed under § 301 and the Eleventh Circuit eventually asked to resolve whether the driver's lawsuit "should be characterized as (1) a 'straightforward' section 301 claim ...; or (2) a 'hybrid' section 301/unfair representation claim." *Id.* at 885. To answer this question, *Samples* focused on "whether the union's role as prosecutor of [the employee's] grievance implicitly extends to the stage of bringing an action to enforce a favorable arbitration award." *Id.* at 886. The court concluded that the union's role did extend to post-arbitral enforcement. *Id.* Accordingly, the court reasoned, an employee's interest in enforcing his or her award could be adequately protected by filing a hybrid action: after all, "a union's failure to enforce the employer's compliance with an arbitration award already rendered would raise a strong question as to the adequacy of its representation." *Id.* The court then applied the *DelCostello* six-month limitations period to Sample's complaint. *Samples,* 755 F.2d at 887.

This court agrees that the critical question with regard to the nature of Williams' claim is whether his union had a duty to enforce the arbitration award. In the presence of such a duty, Williams' complaint would indeed assert a hybrid action, just as the Eleventh Circuit concluded in *Samples.* The court departs from *Samples* at this point, however, in light of the Seventh Circuit's clear pronouncement that "[t]he function of the Union [is] perfected by its winning of the arbitration." *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union,* 629 F.2d 1204, 1212 (7th Cir.1980).

*Woolworth* involved employees who sought to intervene on appeal after the union unsuccessfully defended an arbitration award in district court. 629 F.2d at 1207–08. The Seventh Circuit stated that "[s]o long as the employees intervene in support of the award and without the opposition—formal or informal—of the Union, they are merely complementing the activities of the Union and seeking to vindicate the purposes for which the Union understood their representation in the first place." *Id.* at 1212. Thus, the Seventh Circuit recognized that "[a]fter arbitration these employees have a specific vested interest in the award going beyond the Union's collective claim." *Id.* Absent some suggestion that the Union had a collective interest against pursuing enforcement, it would be unfair for the Union "to pre-empt all representation." *Id.*

The distinction between *Woolworth* and the case at bar is one without a difference. In *Woolworth,* the issue was defending an arbitration award against attack; here, Williams is suing to enforce the award. In both instances, individual employees have acted in manners consistent with their unions' positions in order to secure what they perceive are their just deserts from arbitration. As in *Woolworth,* nothing in Williams' action implies criticism of his union. It is simply that in this circuit the union had no duty to enforce the award and Williams wants to do so. Williams' lawsuit is, therefore, best characterized as a straightforward § 301 suit. As such, the case is not constricted by the six-month limitations period imposed in hybrid § 301/unfair representation suits.[1]

**B.** *The applicable limitations period.*

 Having concluded that Williams presents a straightforward § 301 claim, the court next turns to the question of the appropriate

---

1. Neither does *Martin v. Youngstown Sheet & Tube Co.,* 911 F.2d 1239 (7th Cir.1990) compel a different result. In *Martin,* the Seventh Circuit characterized *Woolworth* as "allow[ing] employees to defend against a suit seeking to vacate an arbitration award favorable to the Union when the Union chooses not to but otherwise acquiesces in the employees' action." 911 F.2d at 1244. This language cannot be fairly read to constrain *Woolworth*'s application to defense of an arbitration award. Neither *Martin* nor *Woolworth* presented a plaintiff-employee suing to enforce an arbitration award. Such an employee suit was, apparently, allowed in *Evans, see* 855 F.2d at 1248 (agreeing with district court that Evans' attem·· to enforce an arbitration award in state court was really " 'a straightforward § 301 breach of collective bargaining agreement claim.' ").

state-law limitations period to borrow. As already noted, Williams' action seeks to collect on the arbitrator's award. So characterized, there are three potential sources for an applicable limitations period.

The court first considers Indiana's laws concerning commercial arbitration. Indiana has adopted the Uniform Arbitration Act, which provides for the confirmation, vacation, modification or correction of an arbitration award by the court. *See* IND.CODE. §§ 34–4–2–12, 34–4–2–13, 34–4–2–14, 34–4–2–15. The uniform act does not, however, provide for enforcement on an award in court. Accordingly, it does not provide a limitations period for such enforcement.

Another logical source is the limitations period for enforcement of judgments. Indiana law provides that actions upon "judgments of courts of record" shall be brought within ten (10) years. IND.CODE. § 34–1–2–2(6). The arbitrator in this case, in a sense, acted as a court of record: she heard evidence concerning the substance of Williams' complaint and made a binding ruling based on that evidence. The court nonetheless rejects application of the § 34–1–2–2(6) limitations period to this case. Such application would fail to take account of the unique context in which Williams' obtained his arbitral "judgment" against USS.

Williams' lawsuit, as discussed, is uniquely one under § 301. The labor law context of Williams' case is critical to selection of the appropriate limitations period because Indiana specifically sets a two-year limitations period for "all actions relating to the terms, conditions and privileges of employment except actions based upon a written contract." IND.CODE. § 34–1–2–1.5. In *Home Elevator*, the Seventh Circuit applied this limitations period to an Indiana lawsuit brought by a union to enforce the terms of a collective bargaining agreement. 798 F.2d at 224. *Home Elevator* held that:

> [I]n section 301 suits such as the one in this case, the state statute of limitations which governs the common law action for breach of contract would apply. When it is Indiana's statutory scheme which will provide the limitations period, the two-year statute designed for employment disputes

not based on a written contract is the most appropriate statute of limitations.

798 F.2d at 230. Like the union in *Home Elevator*, Williams seeks redress for an employer's alleged failure to live up to its obligations under a collective bargaining agreement—in this case, the employer's obligation to comply with an arbitrator's award. Accordingly, the § 34–1–2–1.5 two-year limitation period is applicable here.

■■■■■ Williams' two years began to run when Williams received the check from USS providing him with backpay for the period between April 9, 1992 and December 31, 1992. It was then that Williams knew, or could have known, that he sustained the injury for which he now complains. *See INB Nat'l Bank v. Moran Electric Service, Inc.*, 608 N.E.2d 702, 708 (Ind.Ct.App.1993) (describing the discovery rule applied by Indiana courts to calculate when limitations periods begin to run). Based upon USS's undisputed submissions, Williams received his backpay check sometime after March 1, 1993. Williams filed this lawsuit on December 2, 1994. Accordingly, Williams' suit is timely.

## IV.

■■■■■ Notwithstanding its timeliness, Williams cannot prevail on the merits of his lawsuit. As USS points out, USS has already paid Williams everything to which his arbitration award entitled him. In so concluding, the court notes that it is not the province of this, or any, court to construe an ambiguous arbitration award. *See United Steelworkers of America v. Danly Machine Corp.*, 852 F.2d 1024, 1027 (7th Cir.1988). The court can, however, determine as a matter of law that an arbitrator's award is unambiguous and rule accordingly. *See id.* That is the determination the court now makes.

Williams seeks backpay for the period between May 1, 1991 and April 9, 1992, *i.e.* from the date his private physician released him to work without restriction. Williams argues that his grievance specifically requested such relief and that the grievance was sustained. This argument fails because: (1) the grievance, as sustained, did not specif-

ically request the now-sought-for relief, and, (2) the arbitrator did not make findings that would sustain such relief.

When the arbitrator sustained Williams' grievance, she sustained it as set out at the beginning of the award. As there set out, the remedy requested by the grievance was "all monies lost" as a result of the unwarranted restriction; the requested remedy was not all monies lost for particular dates. It is this characterization to which the court turns to determine what the arbitrator meant when she said "[t]he grievance is sustained."

As for what monies Williams did lose, the only reasonable reading of the award is that Williams' losses accrued as of April 9, 1992. The arbitrator found that USS would not accept releases from private physicians unless such releases were supported by "solid medical evidence." In Williams' case, the arbitrator found that the solid evidence supporting Williams' private physician's release was Dr. Goldberg's independent evaluation. That evaluation was not obtained until April 9, 1992. Accordingly, the arbitrator found that Williams would be "made whole for all losses incurred since Dr. Goldberg released him to return to work without restriction on April 9, 1992." It being undisputed that Williams has received that amount, Williams cannot recover more by this lawsuit.

USS is therefore entitled to judgment as a matter of law. USS's motion for summary judgment is **GRANTED**. The clerk is **OR-DERED** to enter final judgment stating:

> Upon the undisputed facts, the defendant, United States Steel, a Division of USX Corp., is entitled to judgment as a matter of law. Mitchell Williams shall take nothing by his complaint.

**SO ORDERED.**