Mitchell WILLIAMS, Plaintiff–Appellant,

v.

UNITED STATES STEEL, a DIVISION OF USX CORPORATION, Defendant–Appellee.

No. 95–1859.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1995.

Decided Nov. 29, 1995.

---

Rudy C. Kutansky (argued), Kutansky & Associates, Gary, IN, for Plaintiff–Appellant.

S.G. Clark (argued), U.S. Steel Group Law Department, Pittsburgh, PA, James E. McHie, McHie, Myers, McHie & Enslen, Hammond, IN, for Defendant–Appellee.

Before BAUER, MANION, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Does "since" mean "because" or does "since" mean "after"? Today's case requires us to explore this seemingly simple defini-

**945**

tion, because approximately $25,000 in back pay hinges on our interpretation.

Before us is Mitchell Williams' appeal of the district court's grant of summary judgment in favor of U.S. Steel. Notwithstanding the aforementioned problem in defining "since", the material facts of Williams' grievance are not in dispute.

### I. Background

At all times relevant to this lawsuit, Mitchell Williams was employed at U.S. Steel's Gary Works plant in Gary, Indiana. In February 1991, he was an Equipment Operator in the Operations Services Division, a position that required a wide range of heavy lifting. When the use of an 80 pound pneumatic hammer led to back pain that radiated through his left leg, Williams stopped work and went to the Plant Medical Department. Williams remained unable to work until May 1, 1991, when his personal physician, Dr. David Ross, released him to return. Despite the release from Dr. Ross, however, Dr. Tevor Novack, Director of the Gary Works Medical Department, imposed a 30 pound weight restriction in light of Williams' history of back problems.

Unfortunately for Williams, the weight restriction made work at the Gary Plant impossible. His job as Equipment Operator consisted of using 80–120 pound jackhammers and handling heavy buckets of refractory bricks and other materials. A 30 pound weight restriction essentially amounted to unemployment. On October 7, 1991, Williams returned to the Plant Medical Department in an effort to have the weight restriction removed. Dr. Amani, a Veteran's Administration physician who did hourly work for the Plant Medical Department, accepted the release from Dr. Ross and removed the restriction, but Dr. Novack reinstated it.

The following spring, U.S. Steel directed Williams to be examined by orthopedists at the University of Illinois Hospital. On April 9, 1992, a date that would become the focal point of this litigation, Dr. Goldberg examined Williams and talked with him about his medical history. Dr. Goldberg's examination report concluded, "I see no contra-indication at this time for him to return to work full

duty." Dr. Novack, however, still was not persuaded. He contacted Dr. Quinn Regan, a Clinical Assistant Professor at the University of Illinois College of Medicine, to inform him of Williams' medical history and prior back problems. On June 30, 1992, Dr. Regan wrote back to U.S. Steel agreeing with his colleague's assessment.[1] Despite both recommendations, Dr. Novack left the 30 pound weight restriction in place. As a result, Williams remained unable to work.

In the meantime, on May 14, 1991, Local No. 1066 of the United Steelworkers of America, the union that represents Williams, had filed a grievance on Williams' behalf. Williams stated his grievance as follows: "Management has me off work without proper and just cause on a 35 [sic] lb. weight restriction." Williams requested that the company allow him to return to work and "pay all monies lost until final settlement of his grievance." Pursuant to the labor agreement between U.S. Steel and the United Steelworkers, the parties submitted the matter to binding arbitration.

On December 22, 1992, the arbitrator issued her decision. In her "findings", the arbitrator identified the sole issue as whether the weight restriction imposed on Williams was proper. After evaluating the record evidence and respective medical opinions, the arbitrator concluded:

"Grievant shall be made whole for all losses incurred *since* Dr. Goldberg released him to return to work without restriction on April 9, 1992." (emphasis added).

This conclusion brings us back to the critical question—what does "since" mean?

U.S. Steel interpreted "since" to mean that Williams was entitled to back pay "as of" April 9, 1992, the date Dr. Goldberg released him to work. Accordingly, the company's labor relations department obtained work schedule information from Williams' department, and calculated the appropriate amount of back pay for the period from April 9, 1992 to December 31, 1992. U.S. Steel issued Williams a paycheck for $24,904.69 on March 1, 1993. Williams promptly deposited the check.

Not surprisingly, Williams interpretation of "since" is quite different. He reads "since" to mean that he is entitled to back pay and other losses *because* Dr. Goldberg released him to work on April 9, 1992. Williams admits that he deposited the check from U.S. Steel. Williams also did not pursue a compliance hearing to clarify the award under the collective bargaining agreement. Nevertheless, he claims that the arbitrator's findings entitle him to additional back pay for the period from May 1, 1991 to April 9, 1992.

Instead of requesting the compliance hearing, Williams filed suit in Indiana state court on December 2, 1994. U.S. Steel removed the case to federal court on the grounds that Williams' claim arises under the Labor Management Relations Act, 29 U.S.C. § 185(a). In its answer, U.S. Steel raised a litany of affirmative defenses, including Williams' standing to sue, the applicable statute of limitations, Williams' failure to exhaust his administrative remedies, and the fact that Williams had received all damages to which he was entitled.

In January 1995, U.S. Steel filed a motion for summary judgment. U.S. Steel's motion primarily asserted that Williams' claim was barred by the six-month statute of limitations set forth in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). The district court granted the motion, but on alternative grounds. Although it found that the *DelCostello* statute of limitations did not apply to Williams' claim, the district court found that the only reasonable reading of the arbitration award was that Williams' losses accrued as of April 9, 1992. *See Williams v. U.S. Steel,* 877 F.Supp. 1240, 1246 (N.D.Ind. 1995). The district court entered judgment for U.S. Steel, and Williams now appeals.

II. *Standard of Review*

■■■ We review the grant or denial of a motion for summary judgment *de novo.* Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In con-

---

1. Like Dr. Goldberg, Dr. Regan concluded that "[a]t this point, I see no contraindications to return to work."

sidering a motion for summary judgment on appeal, we draw all inferences from the record in favor of the non-moving party.

### III. *Analysis*

As a preliminary matter, Williams argues that U.S. Steel sought summary judgment solely on the basis that the claim was barred by the applicable statute of limitations. However, this court has held that summary judgments may be granted on any ground that finds support in the record, as long as the non-moving party had an opportunity to submit affidavits or other evidence and contest the issue. *Box v. A & P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir.1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986); *see also P.S. Johnson v. Gudmundsson*, 35 F.3d 1104, 1115 (7th Cir.1994); *Miller v. Gateway Transp. Co.*, 616 F.2d 272, 275 n. 7 (7th Cir.1980). U.S. Steel raised various affirmative defenses in its answer, and specifically noted in its motion that it did not waive any other issues which may form the basis of a motion for summary judgment.

With respect to the plain meaning of the grievance award, Williams argues that the arbitrator's use of "since" in the relevant sentence of her findings creates an ambiguity that should be resolved by a jury. However, a court can determine, as a matter of law, that an arbitrator's award is unambiguous if the ambiguity can be resolved from the record. *See Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 278 (7th Cir. 1989); *United Steelworkers of Amer. v. Danly Machine Corp.*, 852 F.2d 1024, 1027 (7th Cir.1988). Despite Williams' contentions to the contrary, the record and arbitration award in this case are not ambiguous.

In the four paragraphs that precede the pivotal sentence, the arbitrator sets forth the various findings that support Williams' grievance award. The arbitrator compared the respective recommendations of Doctors Ross, Regan and Goldberg, as well as Dr. Novack's testimony that releases from personal physicians are no longer accepted unless they are supported by solid medical evidence. In this context, it is clear that the arbitrator's sentence about Dr. Goldberg releasing Williams to work pinpoints the date on which the solid medical evidence became available.

Moreover, the respective recommendations of Doctors Regan and Goldberg provide additional proof that solid medical evidence was not available until April 9, 1992. Both doctors preface their recommendations that Williams could return to work with the phrases "at this time" and "at this point". These recommendations form the critical portion of the "solid medical evidence" on which the arbitrator relied. Williams was entitled to back pay only when solid medical evidence supported the opinion of his personal treating physician. The only reasonable interpretation of the arbitrator's decision is that Williams could not have met this standard before April 9, 1992.

In pinning his hopes on "since", Williams would have us disregard the context of the sentence and focus on one allegedly ambiguous word. This is an artful reading of the arbitrator's findings, but it belies the plain meaning of the decision as a whole. The arbitration award is clear, and no further judicial proceedings will make it any clearer.[2] The district court properly entered summary judgment on behalf of U.S. Steel.[3]

### IV. *Conclusion*

Williams recovered all of the losses and back pay to which he is entitled. The decision of the district court therefore is

AFFIRMED.

---

2. As Judge Manion pointed out at oral argument, a hearing to resolve the supposed ambiguity of "since" would prove futile. Additional testimony from the respective doctors would not assist a trier of fact. And, while it goes without saying that more precise writing by the arbitrator might have resolved this dispute, both parties acknowledge that policy reasons immunize arbitrators from subsequent cross-examination.

3. Because we find in favor of U.S. Steel on other grounds, we decline to reach the remaining affirmative defenses including whether Williams' claim is barred by the six month statute of limitations under *DelCostello*.