**Richard Edwin SAMPLES, Sr., Plaintiff-Appellant,**

v.

**RYDER TRUCK LINES, INC., Defendant-Appellee.**

No. 84–8096.

United States Court of Appeals, Eleventh Circuit.

March 20, 1985.

---

Martin L. Cowen, III, Jonesboro, Ga., for plaintiff-appellant.

John Paul Jones, Clearwater, Fla., for defendant-appellee.

Before VANCE and ANDERSON, Circuit Judges, and PITTMAN *, District Judge.

VANCE, Circuit Judge:

Richard Edwin Samples appeals the district court's holding that his action to enforce an arbitration award against Ryder Truck Lines is time-barred. We affirm, not only on that ground, but also because the appellant declines to make the necessary preliminary allegation that his union has failed in its duty to press his claim adequately for him.

## I. FACTS AND PROCEEDINGS TO DATE

Samples was employed by Ryder under a contract negotiated by the Teamsters. On July 2, 1981, Ryder terminated Samples for "dishonesty," claiming that he had cashed a check, reported it lost, and then cashed the replacement check. On July 6, 1981, Samples filed a "grievance report" in accordance with the terms of the collective bargaining agreement. On July 28, an arbitration panel filed a "Results of Grievances" letter, which purported to resolve the issue by concluding that "if driver was paid all monies due him when he departed Atlanta on 4–5–81, the claim is denied, if he did not receive all monies due him the claim is sustained." Samples was not reinstated, and neither he nor his union appears to have taken any action to establish his entitlement to reinstatement for the next two years. Then, on July 1, 1983, Samples filed suit for reinstatement in state court, claiming that he could produce facts showing that the arbitration proceeding had resolved the dispute in his favor. Ryder removed on the ground that the claim arose under the terms of a collective bargaining agreement and was therefore governed by section 301(a) of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a).[1] The district court agreed and

---

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. Section 301(a) of the LMRA states in relevant part:

   "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

took jurisdiction, but then found that the action was barred under the six month statute of limitations found in section 10(b) of the NLRA, 29 U.S.C. § 160(b).[2] Samples appealed.

## II. THE NATURE OF THE CLAIM

Samples' claim is essentially one for enforcement of an arbitration award rendered under the terms of a collective bargaining agreement.[3] Because the federal labor laws impose significant restrictions on the employee attempting to assert a collectively bargained right in court, we must first determine whether Samples has the kind of claim that he may individually assert at all. Both he and Ryder present us with a number of theories for characterizing his claim. We address each in turn.

Samples' first suggestion is that he has a simple state law claim. He originally brought suit in state court on this theory, asserting alternatively that his action could be viewed as an attempt to "enforce the written contract of employment with his former employer" or else as a "straightforward state court action to enforce an arbitration award." We find these characterizations to be precluded, however, by a long line of Supreme Court cases extending back to *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), which establish that where an otherwise valid state law overlaps with section 301(a), the state law is usually preempted. The Supreme Court has observed that "the subject matter of § 301(a) 'is peculiarly one that calls for uniform law.' ... The possibility that individual contract terms may have different meanings under state and federal law

would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962) (citations omitted) (quoting *Pennsylvania Railroad Co. v. Public Service Commission*, 250 U.S. 566, 569, 40 S.Ct. 36, 37, 64 L.Ed. 1142 (1919)). *See also Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). The Court most recently restated the scope of preemption under the NLRA in *Local 926, International Union of Operating Engineers v. Jones*, 460 U.S. 669, 674–78, 103 S.Ct. 1453, 1458–59, 75 L.Ed.2d 368 (1983), where it noted that if the conduct at issue "is actually or arguably protected or prohibited by the NLRA ... state law and procedures are ordinarily preempted." The Court added that exceptions are proper only where the issue "is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the state of the power to act." *Id.* at 676, 103 S.Ct. at 1459.

*Jones* requires a finding of preemption here. First, as this circuit has already held in *Diaz v. Schwerman Trucking Co.*, 709 F.2d 1371 (11th Cir.1983), a suit to enforce a favorable arbitration award is a section 301 claim. The character of such a claim further compels a finding that only federal law should apply. The danger that incompatible state law may disrupt the collective

---

**2.** Section 10(b) of the NLRA by its terms applies to unfair labor practice complaints registered before the NLRB, but has been adopted for suits to enforce rights under section 301. *See infra* part III. The text of section 10(b) reads in relevant part:

Whenever it is charged that any person has engaged in or is engaging in any ... unfair labor practice [as listed in 29 U.S.C. § 158], the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon

such person a complaint stating the charges in that respect ... *Provided*, that no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board....

**3.** Because of our disposition of the case, we do not reach the merits of the appellant's claim. Were we to do so, we would find it necessary to remand for further proceedings, as it is unclear whether there was actually any arbitration award in his favor.

bargaining process is no less likely for suits to enforce arbitration than for any other attempt to force compliance with the terms of the collectively bargained grievance procedure. In addition, there is little likelihood that federal preemption will constitute undue interference with rights "rooted in local feeling." Samples' claim owes its existence not to the workings of state contract or arbitration law, but rather to the workings of the complex regulatory scheme embodied in the NLRA. For these reasons, we find that Samples' potential state law claims have been preempted by section 301(a) of the LMRA.

Having determined that this suit is governed by section 301(a), we are next faced with the question of whether it should be characterized as (1) a "straightfoward" section 301 claim, which Samples can assert directly in his capacity as an individual employee harmed by his employer's breach of the collective bargaining agreement, *see Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); or (2) a "hybrid section 301/fair representation claim," which he can only assert individually if he alleges additionally that his union breached its duty of fair representation in failing to prosecute his claim, *see Hines v. Anchor Motor Freight*, 424 U.S. 554, 571, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). Samples contends that he has a straightforward claim, while Ryder asserts that he erred in failing to allege inadequate union representation.

The proper characterization of the claim must be grounded in an understanding of the rationale behind the distinction. The cases demonstrate that it is a product of courts' continuing efforts to strike a proper balance between the need to protect individual employees' interests in gaining redress for their grievances and the need to protect the collective interest in preserving the autonomy of the negotiated grievance and arbitration procedures. Generally, the courts have refrained from adjudicating individual employee suits against an employer when the employee could gain redress by relying on his union representatives and the collectively bargained grievance procedure. Any curtailment of individual remedies has been considered justified by the systemic benefits of collective bargaining. Indeed, after Congress passed the LMRA, the Supreme Court and numerous lower courts initially concluded that the right to bring a straightforward section 301 suit for breach of the collective bargaining agreement was limited to unions and employers. *See Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.*, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955); *see, e.g., Sheppard v. Cornelius*, 302 F.2d 89 (4th Cir.1962); *Palnau v. Detroit Edison Co.*, 301 F.2d 702 (6th Cir. 1962); *Copra v. Suro*, 236 F.2d 107 (1st Cir.1956). Later, the Court found this interpretation to result in too severe a restriction of individual employees' rights, and concluded in *Smith v. Evening News* that "§ 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and discharge." *Hines*, 424 U.S. at 562, 96 S.Ct. at 1055.

Nonetheless, the basic rule of noninterference continues in other ways to limit severely the employee's ability to assert his section 301 rights. The first limitation is procedural. The employee is generally barred from bringing suit unless and until he has resorted to all of the dispute resolution procedures specified in the collective bargaining agreement. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The second limitation is representational. The employees' decision for union representation means exclusive representation, not only for purposes of collective bargaining, *see Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 685, 97 L.Ed. 1048 (1953), but also for prosecuting the individual grievances that arise during administration of the contract, *see Maddox*, 379 U.S. at 653, 85 S.Ct. at 616. Although these restrictions arguably limit the individual grievant's ability to assert his claim as forcefully as he might like, the basic pre-

mise of unionism is that such a sacrifice on the individual's part is more than outweighed by the benefits that accrue to him when his union can act with the assurance that it speaks with the exclusive voice of all its members.

At the same time, the courts have not ignored the reality that the rights of the individual can be unfairly jeopardized when his union ignores or mismanages his claim. In order to avoid the injustice that would result from leaving the employee remediless in such cases, the courts have developed the "hybrid claim" exception. They will give the employee his day in court when he can show both that the employer has breached the collective bargaining agreement and that the union has breached its duty of fair representation in handling the ensuing grievance proceeding. *See Vaca v. Sipes*, 386 U.S. at 185–86, 87 S.Ct. at 914–15.

Samples does not contend, however, that his union failed to afford him fair representation. Rather, he argues that he has a straightforward section 301 claim because he has already complied with all of the explicit contractual provisions that stood between him and the courthouse door.[4] He has, in fact, submitted to arbitration and to exclusive representation until now. The issue, then, is whether the union's role as prosecutor of his grievance implicitly extends to the stage of bringing an action to enforce a favorable arbitration award. Taking our guidance from the general prin-

ciples of labor law outlined above, we find that it does. To hold otherwise would undermine the effectiveness of the settlement machinery agreed upon in the contract. An individualized right of action to enforce an arbitration award, no less than the action of invoking arbitration itself, would certainly disrupt the administration of the collective agreement and "would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances." *Maddox*, 379 U.S. at 653, 85 S.Ct. at 617. The employee's interest in seeing that the arbitration award will be enforced is, moreover, sufficiently protected by the "hybrid claim" exception. Whereas in the early stages of the grievance procedure the union has substantial latitude to refuse to press even a meritorious grievance without being found an inadequate representative, *see Vaca*, 386 U.S. at 191–95, 87 S.Ct. at 917–19, a union's failure to force the employer's compliance with an arbitration award already rendered would raise a strong question as to the adequacy of its representation.

■ For these reasons we find that where a collective bargaining agreement specifies an arbitration procedure in which the union functions as the individual's exclusive representative, the job of asserting the individual's potential right of action to enforce the arbitration award under section 301 is presumed to have been delegated to

---

**4.** Since the district court dismissed on statute of limitations grounds it did not reach the question of whether Samples had failed to state a cause of action under Fed.R.Civ.P. 12(b)(6). It did, however, tentatively conclude that this action, being a hybrid claim, was insufficient for failure to allege breach of the union's duty of fair representation. We are well aware that explicit terms in the collective bargaining agreement can modify the rights and duties of the parties within the limits of the law. Because the terms of the collective bargaining agreement can be so essential in defining the rights of the parties and in specifying the essentials of the grievance proceedings involved, a dismissal for failure to state a claim ordinarily would be improper on the current state of the record. *Cf. Smith v. Evening News Ass'n*, 371 U.S. 195, 196 n. 1, 83 S.Ct. 267, 268 n. 1, 9 L.Ed.2d 246 (1962) (finding

that employee could bring suit under section 301 because the collective bargaining agreement specified no grievance procedures for resolving disputes). Unless the record reflects the terms of the collective bargaining agreement, it would normally be impossible to be sure that there exists no theory under which the employee could make out a viable section 301 claim. In this case, however, a remand to supplement the record would be futile because Samples' suit is barred in any event by the statute of limitations. *See infra* part III. Although the agreement would be helpful, Samples does not argue that there are any terms that would cause us to reach a contrary result. On the basis of his argument we conclude that we have sufficient information to evaluate the sufficiency of the claim in accordance with the basic principles of law.

the union as one of its duties as exclusive representative.[5] Samples' right to bring this hybrid claim was therefore contingent on a showing that his union's failure to do so amounted to inadequate representation under *Vaca* and *Hines.* *See Diaz v. Schwerman Trucking Co.,* 709 F.2d 1371 (11th Cir.1983).

### III. APPLICABLE STATUTE OF LIMITATIONS

■ Aside from the insufficiency of the complaint, the applicable statute of limitations affords independent reason for upholding the district court's dismissal.[6] Indeed, it appears that Samples' claim would be time-barred whether it were characterized as a straightforward section 301 suit or a hybrid claim. Our determination of the applicable limitations period is largely controlled by the Supreme Court's most recent pronouncement on the issue in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 158–63, 103 S.Ct. 2281, 2287–89, 76 L.Ed.2d 476 (1983). In 1966, before the Court had recognized the viability of hybrid claims in *Vaca,* it established in *International Union of United Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703–05, 86 S.Ct. 1107, 1111–1113, 16 L.Ed.2d 192 (1966), that courts should look to the most closely analogous state statute when defining the limitations period for section 301 suits. Last term in *DelCostello,* however, the Court adopted a new approach for hybrid suits, declaring

the six-month limitation period found in section 10(b) of the NLRA to be the proper limitations period for the employee's dual cause of action against his employer and his union. *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294. Since we have characterized Samples' claim as a hybrid suit, *DelCostello* gave him six months from the time at which his cause of action accrued to assert it.

■ In so holding, we must in turn determine when the cause of action accrued. As a rule, an employee's right to bring suit accrues when he knows or should know of his union's breach of its duty to represent him. *See Scott v. Local 863, International Brotherhood of Teamsters,* 725 F.2d 226, 229 (3d Cir.1984); *Santos v. District Council of New York City,* 619 F.2d 963, 969 (2d Cir.1980). Such an issue would normally be a question of fact which we would leave to the district court to resolve on remand.[7] In this case, however, we find that the law's overriding concern with the prompt resolution of labor disputes requires us to define as a matter of law some point at which the employee must be attributed with knowledge of his union's inadequate representation. We hold that the employee's cause of action accrues at the latest when his union's time for asserting the claim itself has run out.

Our next task, therefore, is to determine what time limitations would have applied to Samples' union had it attempted to enforce

5. This does not mean that Samples would be required to sue his union; he need only allege, and eventually show, inadequate representation. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983).

6. We reach the statute of limitations question because of appellant's option to amend on remand in order to make the necessary allegations as to his union's breach of its duty of fair representation.

7. Because questions as to the union's breach of its duty of fair representation usually arise in an action to overturn an unfavorable arbitration award, knowledge of the union's breach can normally be attributed to the employee at the moment when he learns of the unfavorable award. *See, e.g., Osman v. Pan American World*

*Airways,* 584 F.Supp. 517 (S.D.N.Y.1984). The instant suit, however, is more akin to those in which no unfavorable disposition has yet been rendered, but where the union's breach would be found in its failure to pursue the grievance procedures that are still available. In such cases, knowledge can normally be attributed to the employee when his union notifies him of its decision not to pursue his claim any further, or when he should by use of normal diligence have realized that it made such a decision. *See Scott v. Local 863, Int'l Bhd. of Teamsters,* 725 F.2d 226, 229 (3d Cir.1984); *Scaglione v. Communications Workers of America, Local 1395,* 586 F.Supp. 1018 (D.Mass.1983); *Rose v. General Motors Corp., Frigidaire Div.,* 573 F.Supp. 747, 751 (S.D.Ohio 1982).

his arbitration award in court. As an initial matter, the union's cause of action would be characterized as a straightforward section 301 claim. Although the Supreme Court left open the question of how much of its holding in *DelCostello* should apply to straightforward claims, it did indicate that reliance on state law for such claims should not be as automatic as its opinion in *Hoosier Cardinal* had previously been interpreted to imply. *See DelCostello*, 462 U.S. at 158 n. 12, 103 S.Ct. at 2287 n. 12. According to the Court's latest reading, *Hoosier Cardinal* "expressly reserved the question whether we would apply state law to § 301 actions where the analogy was less direct or the relevant policy factors different." *DelCostello*, 462 U.S. at 163, 103 S.Ct. at 2289.

■ *DelCostello* thus leaves us with a somewhat fluid balancing test for straightforward claims—one in which we are to adopt state limitations periods if they provide a direct analogy and arise out of similar policy considerations, but should adopt the section 10(b) period if state law does not afford sufficiently direct guidance. Following this directive, we look first to Georgia law. Georgia has no specific statute of limitations for actions to enforce arbitration decisions. It treats an arbitration award like a judicial determination unless a party challenges the award, O.C.G.A. § 9–9–47(b). The victorious plaintiff has the same enforcement remedies that would be available to a victor in state court, subject to the state's seven year dormancy provision. O.C.G.A. § 9–12–60. We find these procedural mechanisms ill-suited to the controversy at hand. A dormancy provision applicable to all actions to enforce judgments cannot be said to be grounded in the essential policy considerations relating to the prompt resolution of labor disputes; indeed, Georgia's lengthy limitations period negates the possibility of prompt resolution. Similar problems inhere in O.C.G.A. § 9–3–24, which provides a six year limitations period for actions to enforce contracts. Although the former fifth circuit adopted this limitations period for section 301 claims generally in *Kaufman and*

*Broad Home Systems v. International Brotherhood of Firemen*, 607 F.2d 1104, 1108 (5th Cir.1979), the Supreme Court has since pointed out in *United Parcel Service v. Mitchell*, 451 U.S. 56, 67, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732 (1981) that a grievance arising during the term of a collective bargaining agreement bears little likeness to a common law breach of contract claim. We therefore find that state law affords no reasonably applicable rule as to the proper time limitation for the union's action to enforce the arbitration award, and we adopt the six month limitation period found in section 10(b) for that aspect of the claim as well.

Were we to find that Samples himself had a straightforward section 301 claim, it would of course be time-barred by the same six-month limitation period that we have applied to his union. As a hybrid claim, it could be brought at the outside one year from the date of the arbitration award: six months during which the union could act, and six months under section 10(b) if the union did not act. Because the claim was asserted more than two years after the arbitration panel had rendered its decision, the district court properly dismissed it for failure to comply with timeliness requirements.

AFFIRMED.