Patricia Joyce COPPAGE, Plaintiff,

v.

UNITED STATES POSTAL SERVICE and National Rural Letter Carriers Association, Defendants.

No. 7:00–CV–18–WDO.

United States District Court, M.D. Georgia, Valdosta Division.

Oct. 30, 2000.

**1376**

Adam J. Conti, Mr., Atlanta, GA, for Patricia Joyce Coppage, plaintiffs.

William David Gifford, Mr., Macon, David J. Worley, Mr., Atlanta, GA, William B. Peer, Michael J. Gan, Washington, DC, for United States Postal Service, National Rural Letter Carriers Association, defendants.

## ORDER

OWENS, District Judge.

Before the Court are Defendant United States Postal Service's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Tab 11] and Plaintiff's Cross–Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment [Tab 16]. As both motions involve the same questions of law, they will be analyzed and adjudicated together in this Order. The Court treats the motions as ones for summary judgment because both parties relied upon matters outside the pleadings in support of their motions. Fed.R.Civ.P. 12(b). For the reasons set forth in this Order, summary judgment is granted in favor of Plaintiff.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts of this case are taken primarily from Plaintiff's Complaint and Answers to Mandatory Interrogatories, or, otherwise from subsequent filings in the record.

Since 1983 Plaintiff has been employed in Valdosta, Georgia as a rural letter carrier by the United States Postal Service. For purposes of the arbitration proceeding pursuant to the collective bargaining agreement, she was represented by Defendant National Rural Letter Carriers' Association (NRLCA).

On March 7, 1997, the Postal Service discharged Plaintiff for reasons not relevant to the issues now before the Court[1]. Plaintiffs filed a grievance regarding this discharge alleging it was in violation of the collective bargaining agreement. On April 2, 1998, an arbitration hearing was held on Plaintiff's behalf wherein the arbitrator considered her grievance and the Postal Service's reasons for her termination. On May 13, 1998, Arbitrator William Holey issued an award sustaining Plaintiff's grievance and directed the Postal Service as follows: to reinstate Plaintiff immediately, "to expunge this removal from her records, to restore her seniority, and to pay her backpay (minus earnings during this period), and interest. The Postal Service is directed to pay the costs of the arbitration." *See* Comp. Ex. "A." There

---

1. Defendants claim that Plaintiff made inappropriate gestures and comments to a supervisor; that is, that they were somehow "threatening." Sixty-eight days after the alleged incident, management looked into the issue. The arbitrator found that there were absolutely no grounds to believe anything Plaintiff said or did on the occasion should have been construed as threatening. As such, the arbitrator found there was no just cause to suspend Plaintiff. Further, the award ordered the Postal Service to expunge Plaintiff's record of any reference to the allegations.

was no mention of reducing Plaintiff's award for any other reason, including failure to mitigate damages, other than the parties taking into account, when determining the amount of backpay owed, any possible money from alternate or secondary employment.

The Postal Service reinstated Plaintiff but failed to pay her the ordered backpay. Instead, the Postal Service argues that the arbitrator's award should have been decreased due to Plaintiff's failure to mitigate damages by not finding other employment during the pendency of her arbitration. Although Plaintiff contends she was never apprised of any duty to do so by the Postal Service, Plaintiff argues that she "diligently" sought other employment but was unable to find another job due to the "stigma" of her discharge and the economic environment in Valdosta, Georgia for providing comparable employment. *See* Pl. Resp. to Mandatory Interrogs. at 2. Plaintiff complained of this to her union representatives at NRLCA on October 27, 1998. Initially, NRLCA sought payment of Plaintiff's back-pay, but the Postal Service refused to abide by the award. By letter on July 27, 1999, NRLCA informed Plaintiff that they had contacted the Postal Service and settled the matter. NRLCA and the Postal Service determined unilaterally that the arbitrator wrongfully awarded Plaintiff backpay, due to the mitigation issue. Plaintiff contested this 'settlement' through private counsel on August 23, 1999, arguing that it was contrary to law, improperly motivated and was without any consent or input from her or her attorney. On September 17, 1999, Plaintiff's attorney contacted NRLCA by letter and demanded that NRLCA fully prosecute her grievance and seek enforcement of the arbitrator's award or a suit would be initiated immediately. By letter dated September 22, 1999, NRLCA informed Plaintiff's attorney of the following: "I have your letter of September 17, 1999. You may govern yourself accordingly." *See* Comp. Ex. "E." The letter was signed by William B. Peer, counsel for NRLCA.

The Plaintiff then filed the Complaint in this matter on February 29, 2000 and alleged the following Counts: (1) breach of employment agreement by (a) the Postal Service for failing to adhere to the binding arbitration award and (b) by NRLCA in ratifying the breach; and (2) breach of the duty of fair representation by NRLCA for failure to enforce the arbitrator's award.

The defenses asserted by Defendant Postal Service in their Answer are as follows: (1) that this Court lacks jurisdiction under 29 U.S.C. § 185; (2) that the Complaint is time-barred as not filed within six months of the final determination by NRLCA of Plaintiff's case; and (3) that Plaintiff failed to state a claim upon which relief can be granted.

The defenses asserted by Defendant NRLCA in their Answer are: (1) that Plaintiff failed to state a claim upon which relief can be granted; (2) that the Complaint is barred by the applicable statute of limitations; and (3) that Plaintiff failed to mitigate her damages.

In its current motion before the Court, Defendant Postal Service petitioned the court to dismiss the Complaint, or in the alternative, to award Defendant summary judgment based on the following arguments: (1) that "Plaintiff cannot maintain a cause of action against Defendant Postal Service because she cannot first establish that the Union breached its duty of fair representation"; (2) that "Defendant Postal Service did not breach any provision of the collective bargaining agreement because it followed its governing regulations ... in processing Plaintiff's back-pay award"; and (3) that "Plaintiff's civil action is untimely with respect to Defendant Postal Service, because the action was filed more than six months after the Postal Service entered a binding settlement agreement with the Union which relieved the Postal Service of any further obligation with respect to the period of backpay disallowed by the Employer." *See* Def. Postal Service's Reply to Pl. Resp. to Def. Mot.

to Dismiss and Resp. to Pl. Mot. on the Pleadings at 1.

Plaintiff contends that Defendant NRLCA breached its duty of fair representation by failing to adequately process her grievance of Defendant Postal Service's failure to follow the arbitrator's award. Plaintiff claims that NRLCA's failure to follow the arbitrator's decision is arbitrary, without factual justification and retaliatory in nature. Plaintiff contends that NRLCA harbored animosity toward her for criticizing NRLCA's effectiveness as an organization and for seeking outside counsel to process her grievance, once NRLCA refused to seek enforcement of the arbitration award. Plaintiff further contends that Defendants waived the ability to now raise the affirmative defense on mitigation of damages when Defendant Postal Service failed to raise the same during the arbitration proceedings. Defendant admitted in their answer that the issue of mitigation was not presented at the arbitration hearing. *See* Def. Postal Service's Answer at ¶ 10. Finally, Plaintiff contends that her suit was timely filed as it was filed within six months of the date she knew that NRLCA would not further process her grievance regarding the back pay issue.

## II. Analysis

### C. Statutory Jurisdiction

The Defendants correctly asserted that jurisdiction for this claim comes from 39 U.S.C. § 1208, rather than 29 U.S.C. § 185, as stated in the Complaint. The former deals specifically with suits "for violation of contracts between the Postal Service and a labor organization representing Postal Service employees." 39 U.S.C. § 1208(b). "Any labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States." *Id.* at (c). It has been recognized specifically in other circuits that caselaw dealing with 29 U.S.C. § 185 is applicable to cases analyzing 39 U.S.C. § 1208 since the wording of the two statutes is virtually identi-

cal. *See Miller v. U.S. Postal Service,* 985 F.2d 9 (1st Cir.1993); *Sheehan v. U.S. Postal Service,* 6 F.Supp.2d. 141 (N.D.N.Y.1997). In the Eleventh Circuit, this is impliedly true as most of the caselaw deciding labor disputes with the Postal Service and its employees in the cases cited below are in fact interpreting 29 U.S.C. § 185 and other law relating thereto.

### B. Summary Judgment Standard

Summary Judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving part is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of clearly establishing the absence of a triable fact issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The initial burden on the party seeking summary judgment is to make a prima facie showing that there are no genuine issues of material fact; once she has done so, the burden shifts to the party opposing summary judgment to go beyond her pleadings and demonstrate the existence of genuine issues of material fact. *Id.* at 323, 106 S.Ct. 2548.

As jurisdiction has been established, the court must next determine whether Plaintiff has standing to bring this suit and whether she timely filed her Complaint. These claims can be decided as a matter of law based on the undisputed facts in the record. Next, the court must determine as a matter of law whether the Defendants have waived the affirmative defense issue of mitigation of damages in this matter by failing to raise it during the arbitration proceedings.

### C. Plaintiff's Standing To Bring Suit

Once jurisdiction is established, the next step is to determine if a court can hear a plaintiff's complaint against her employer and her union. This is known as a "hybrid" suit. To bring a hybrid suit, the plaintiff must first establish that the union

breached its duty of fair representation of the plaintiff's employment grievance. This has been proved by showing "that the union's conduct *during* the arbitration . . . constituted a breach of the union's duty of fair representation." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (emphasis supplied); *Sams v. United Food & Commercial Workers Int'l Union*, 866 F.2d 1380, 1381 (11th Cir.1989) (defines "hybrid claim"). A majority of the cases on this subject have analyzed arbitrary conduct by the union during arbitration. In the case at bar, the union's inactivity *after* arbitration is at issue. As such, it not well-settled in this or any other circuit what determines breach of the union's duty after arbitration, with facts such as the ones in the case at bar. The law that has been established deals primarily with: (1) a failure to adequately represent the employee during arbitration; or (2) the union attacking the arbitration award itself when the award is in favor of the employer.

While judicial review of arbitration awards and proceedings are "extremely narrow," *Sullivan, Long & Hagerty, Inc. v. Local 559*, 980 F.2d 1424, 1426 (11th Cir.1993), it is important that an "aggrieved employee is afforded a forum where he or she can obtain complete and meaningful relief." *Middleton v. CSX Corp.*, 694 F.Supp. 941, 947 (S.D.Ga.1988). This is especially true when a union breaches its duty to treat the employee fairly in the arbitration process and acts in a "discriminatory, dishonest, arbitrary, or perfunctory fashion." *Id.* at 944 (citing *DelCostello*, 462 U.S. at 164, 103 S.Ct. 2281.

In an Eleventh Circuit case, *Aluminum Brick*, the court analyzed a case similar to the one at bar. *Aluminum Brick and Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545, 1549 (11th Cir.1993). *Aluminum Brick* was remanded back to arbitration after the international union office filed suit. However, that was only because the international union had a dispute over the amount of

backpay awarded because they were not involved in the prior arbitration proceedings. In dicta, the court addressed whether the amount of backpay awarded should be analyzed after determination by the arbitrator. The court reasoned that "[a]s a general rule an arbitration award requiring reinstatement and backpay, but leaving the calculation of the amount of backpay to the parties, is considered final and enforceable." *Id.* "The courts . . . have no business weighing the merits of the grievance, . . . or determining whether there is particular language in the written instrument which will support the union's claim." *Id.* at 1550. Further, interpretation of the collective bargaining agreement itself is in the sole discretion of the arbitrator. *Id.* The court found that the amount of the award should only be reconsidered by a district court if the language of the award was so unclear as to what the Plaintiff was entitled that the award itself is ambiguous.

 In the case at bar, there is absolutely no ambiguity in the arbitrator's award. The award clearly reads that the Plaintiff was to be paid for the time she was wrongfully out of work. There was a clause stating that any amounts earned from another job during the interim of Plaintiff's suspension and the arbitration were to be subtracted from the backpay. For reasons already addressed above, Plaintiff was unable to find work after searching for alternate employment. Therefore, there was *no* amount to be deducted from the binding arbitration award. The award did not mention anywhere that any amount should be deducted for failure to mitigate damages. Defendant Postal Service's failure to follow this binding award was a violation of the collective bargaining agreement whereby all parties agreed that arbitration awards are binding. Defendant NRLCA's failure to enforce the same was a breach of their duty of fair representation. Unlike a majority of the caselaw on fair representation dealing with improper conduct by a union representative during the course of the

arbitration, the case at bar deals with NRLCA's conduct after the arbitration proceedings were closed and the award was determined. The Eleventh Circuit has determined that "[w]hereas in the early stages of the grievance procedure the union has substantial latitude to refuse to press even a meritorious grievance without being found an inadequate representative, ... a union's failure to force the employer's compliance with an arbitration award already rendered would raise a strong question as to the adequacy of its representation." *Samples v. Ryder Truck Lines, Inc.,* 755 F.2d 881, 886 (11th Cir. 1985). The *Samples* court held that the union's role as prosecutor of the employee's grievance implicitly extends to the stage of bringing an action to enforce a favorable arbitration award. *Id.* This circuit has also recognized that "once [a] claim is taken to arbitration, the union must advocate the employee's position." *Del Casal v. Eastern Air Lines, Inc.,* 465 F.Supp. 1254, 1258 (S.D.Fla.1979) (citing *N.L.R.B. v. P.P.G. Industries, Inc.,* 579 F.2d 1057, 1059 (7th Cir.1978). Another court held that this duty "requires a union to ... defend favorable arbitration decisions in Court" by appealing an adverse decision at the district court level. *Lofton v. USPS,* 592 F.Supp. 36 (S.D.N.Y.1984). In the Fourth Circuit, the union violates its duty of fair representation when it fails to "adequately process" an employee's grievance. *Tufts v. USPS,* 431 F.Supp. 484, 490 (N.D.Ohio 1976). Therefore, it is only logical that if the union must advocate the employee's position vigorously at the arbitration stage and beyond, it must ensure that the arbitration award is enforced for the employee by filing suit if necessary against the employer. If the union breaches this duty and fails to enforce the award, the employee must be allowed to pursue a claim against both the union and the employer.

Defendant has argued that their duty was not breached because "mere negligence on the part of a union does not amount to a breach of the duty of fair representation." *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1519 (11th Cir.1988). Defendant also relied on Fourth Circuit caselaw that "simple negligence, ineffectiveness, or poor judgment is insufficient to establish a breach of the union's duty ... Rather, the union's conduct must be 'grossly deficient' or in reckless disregard of the member's right." *Ash v.. United Parcel Service,* 800 F.2d 409, 411 (4th Cir. 1986). While those statements are true, they are not viable defenses for Defendant NRLCA in this action. NRLCA's failure to follow the binding arbitration award was 'grossly deficient' and in 'reckless disregard' of Plaintiff's rights in light of their collective bargaining agreement which holds arbitration awards binding. Defendant NRLCA attempted to merely rid itself of Plaintiff's claim in a "perfunctory fashion" completely ignoring the award given to Plaintiff by the arbitrator. *Massey v. United Transp. Union,* 868 F.Supp. 1385, 1394 (S.D.Ga.1994), *aff'd mem.,* 65 F.3d 183, (11th Cir.1995). As in *Massey,* NRLCA "merely shuttl[ed] Plaintiff's] claim through the grievance process with no concern for its resolution." *Id.* NRLCA ignored the award, inexplicably failed "to take the required step of enforcing the award" and gave Plaintiff's grievance about the backpay "merely cursory attention." *Id.* NRLCA gave Plaintiff no indication that it defended the award to the Postal Service, or, that they in any way attempted to enforce the award for Plaintiff. The collective bargaining agreement states that the award of the arbitrator is "final and binding." *See* Agreement, Article 15.5.A, § 5. There are no provisions in the agreement whereby the Postal Service may unilaterally alter a binding award. By doing so, and by Defendant NRLCA's ratifying the same, both Defendants are in breach of the Agreement and Plaintiff is entitled to judgment against them accordingly.

### D. Timeliness of Plaintiff's Complaint

■ "[T]he timeliness of [this] suit is measured from the date the plaintiff knew

or should have known of the Union's final action or the employer's final action, whichever is later." *Adams v. United Paperworkers Intern.,* 189 F.3d 1321, 1322 (11th Cir.1999). "Final action" means "the point at which the grievance procedure was exhausted or otherwise [broken] down to the employee's disadvantage." *Id.* (citing *Howard v. Lockheed–Georgia Co.,* 742 F.2d 612 (11th Cir.1984)). It has been well-settled in this Circuit for more than a decade that, from the time of this final action, the employee has six months to file suit against the union and the employer. *Id.See also Sams,* 866 F.2d at 1382 (11th Cir.1989); *Massey,* 868 F.Supp. at 1389.

In *Massey,* the court held that the six months had run, not when the Public Law Board convened on September 24, 1992 to determine the employee's complaint, as suggested by the union, but when the employee knew "whether a lawsuit would be necessary to further pursue his claims." *Id.* The board held in favor of Central Georgia Railroad. The decision was handed down on April 30, 1993. Thus, the court held that when the board denied plaintiff's appeal of his termination, he knew he would need to file suit. Similarly, in *Hayes v. Reynolds Metals Co.,* an employee "was notified by letter dated June 17, 1982, that the union would not take his claim to arbitration." *Hayes v. Reynolds Metals Co.,* 769 F.2d 1520, 1523 (11th Cir. 1985). "At that point, the grievance process came to a halt. [The employee] filed suit on September 16, 1982, three months later, well within the statute of limitations announced in *DelCostello.*" *Id.* "For Hayes, the grievance process ended on June 17, 1982, when the Union formally notified him of its decision not to arbitrate. He would have six months from that date to bring a hybrid claim." *Id.* at 1522.

■ In this case, Defendants argued that the six-month statute of limitations began to run on July 27, 1999; that is, the date that NRLCA and the Postal Service representative met and determined unilaterally that the arbitration award should have been reduced due to the mitigation

issue. However, applying the law of the Eleventh Circuit, the time at which the Plaintiff knew·the proceedings had broken down to her disadvantage was on September 22, 1999. This was when NRLCA sent Plaintiff the letter wherein the union attorney made it clear that the union would no longer process her grievance or attempt to enforce the arbitration award. Plaintiff filed this suit 160 days after the September 22, 1999–letter; that is, within precisely 5.33 months, not counting the several days allowed for Plaintiff's counsel to receive the letter through the mail. Therefore, the complaint in this matter was timely filed.

## E. Waiver of Affirmative Defense Regarding Mitigation of Damages

Although this issue has not been settled directly in the Eleventh circuit with facts similar to ones in this case, a district court has found that if the employer "believed there was a mitigation of damages issue, [the arbitration hearing] was the time to raise it, develop the evidence, and secure the arbitrator's decision." *Encino Shirt Co. v. ILGWU,* No. 78–W–5093–NE, 1980 WL 2124, 1980 U.S. Dist. LEXIS 15508, at *5 (N.D.Ala. Mar. 27, 1980). There is persuasive authority from other jurisdictions holding that the failure to raise the issue of mitigation of damages in labor arbitration waives that issue for all time. The "failure to present the mitigation issue and evidence below waives the issue in an enforcement proceeding." *Pittsburgh Metro Area Postal Workers' Union v. USPS,* No. 95–1706, 1997 U.S. Dist. LEXIS 12582, at *30 (W.D.Pa. May 12, 1997) (adopted in full by No. 95–1706, 1997 U.S. Dist. LEXIS 15069 (W.D. Pa. June 18, 1997)). *See also Teamsters, Chauffeurs, etc., Local Union No. 330 v. Elgin Eby– Brown Co.,* 670 F.Supp. 1393 (N.D.Ill. 1987);

■ In the case at bar, there is no indication in the arbitration award that the issue of mitigation was argued by either Defendant. Both Defendants admitted in their Answers to Plaintiff's Complaint that

they did not bring up the issue during arbitration. It may "be a good idea that an arbitrator should consider an employee's duty to mitigate, but failure to do so, specifically when not requested to do so, is not grounds to vacate an arbitrator's award or to decline enforcement." *Id.* at 1397. Thus, the Postal Service's failure to argue the affirmative defense of mitigation at the arbitration hearing precludes either Defendant from asserting that defense now. In light of this defense being unavailable to Defendants and there being no evidence in the record for substantive review of the award, the arbitrator's decision is binding upon the parties to this suit. As such, the refusal to follow the award was a breach of the collective bargaining agreement. Therefore, Plaintiff is entitled to judgment as a matter of law in this case.

### III. Conclusion

As Plaintiff has met her burden of proof on the above claims, her Motion for Summary Judgment is **hereby GRANTED in its entirety.** Defendant Postal Service's Motion for Summary Judgment is **DENIED.** Accordingly, the claim against Defendant NRLCA is decided in Plaintiff's favor as well. The back pay as determined by the arbitration award is affirmed.