[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14244
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cv-03307-WMR

COMMUNICATIONS WORKERS OF AMERICA,

Plaintiff-Appellant,

versus

BELLSOUTH TELECOMMUNICATIONS, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 20, 2021)

Before NEWSOM, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Communication Workers of America, a union representing BellSouth Telecommunications, LLC's employees, appeals the district court's summary judgment for BellSouth on the union's complaint to compel arbitration. The district court concluded that the union's complaint was untimely because it was filed more than six months after BellSouth "unequivocally refused to arbitrate." We disagree and, thus, we vacate the summary judgment and remand to the district court to address the other arguments in the parties' summary judgment motions.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

BellSouth and the union entered into a collective bargaining agreement that established the hours, wages, and other terms and conditions of employment for BellSouth employees. The agreement set out a four-step grievance process for resolving disputes between BellSouth and its employees. For some disputes that couldn't be resolved by the grievance process, the agreement allowed the parties to opt for binding arbitration. For other unresolved disputes, arbitration was not an option.

John Chris Butler was a BellSouth employee covered by the collective bargaining agreement and represented by the union. BellSouth employed Butler from 1999 until 2008, when he resigned. BellSouth rehired Butler in 2009, but he was laid off in 2012. Butler was rehired again in 2013. When he was rehired in

2

2013, BellSouth gave Butler seniority credit for his employment from 2009 to 2012 but didn't give him any credit for his first stint with BellSouth from 1999 to 2008.

In 2016, the union filed a grievance on Butler's behalf because it read the collective bargaining agreement to give him seniority credit for his service from 1999 to 2008. After going through the four-step grievance process, the parties were unable to resolve the grievance, so the union submitted a written request for arbitration in February 2018.

In June 2018, the union contacted BellSouth to select an arbitrator. The parties selected an arbitrator and scheduled an arbitration hearing for November 29, 2018. On October 1, 2018, after the parties selected an arbitration date, BellSouth emailed the union that it didn't believe the grievance could be arbitrated under the collective bargaining agreement. BellSouth asked the union to explain why it thought the grievance was arbitrable. On November 1, 2018, the union responded that it read the agreement as allowing a seniority calculation dispute to be arbitrated, so it wanted to proceed with the arbitration. On November 14, 2018, BellSouth emailed the arbitrator, copying the union, and canceled the arbitration. BellSouth told the arbitrator that the parties didn't need future arbitration dates "at [that] time," but they would contact the arbitrator "if that change[d]." BellSouth told the union that the company did not want to go forward with the arbitration at that time because it did not believe that the dispute was arbitrable.

3

Still, the parties continued to go back-and-forth on the merits of the grievance and whether the grievance was arbitrable. On January 15, 2019, the union sent BellSouth an email with a chronology of Butler's tenure to help with the ongoing discussions. BellSouth responded that it had "reviewed the chronology" and suggested the parties talk about the grievance. On January 24, 2019, BellSouth and the union met and discussed their "respective positions on both the arbitrability issue and on the merits of the grievance."

On February 20, 2019, the union followed-up with BellSouth about the "status of [the] [B]utler arbitrability issue." BellSouth responded that it was "waiting on . . . the pension answer on Butler's service date." On March 19, 2019, the union emailed BellSouth again asking about BellSouth's "position regarding arbitrability of [the] seniority issue in Butler." BellSouth responded that it would "follow back up" but that it didn't "believe [there was] any chance of changing the stance on substantive arbitrability." On July 22, 2019, the union filed its complaint to compel BellSouth to arbitrate the grievance under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.

The union and BellSouth filed cross-motions for summary judgment. BellSouth argued that: (1) the union's complaint to compel arbitration was untimely because the six-month statute of limitations to file the complaint began to run when the company unequivocally refused to arbitrate the grievance, and more than six

4

months had passed since BellSouth refused to arbitrate the grievance on November 14, 2018; and (2) the grievance was not arbitrable under the collective bargaining agreement.    The union responded that:    (1) BellSouth never unequivocally refused to arbitrate; (2) the back-and-forth discussions after BellSouth said the grievance was not arbitrable made any refusal to arbitrate equivocal; and (3) the grievance was arbitrable under the collective bargaining agreement.

The district court granted summary judgment for BellSouth because the union's complaint to compel arbitration was filed more than six months after BellSouth's unequivocal refusal to arbitrate and after the statute of limitations had run.  The district court found that BellSouth's October 1, 2018 email to the union explaining its position that the grievance was not arbitrable was an unequivocal refusal to arbitrate.  The district court also found that "when BellSouth cancelled the arbitration on November 14, 2018" because "the [g]rievance was not substantively arbitrable," the union was "further placed on notice of BellSouth's position."  The district court rejected the union's argument that the six-month statute of limitations was extended by the parties' continued discussions of the grievance and its arbitrability.  Because the district court found that the statute of limitations had run, it did not determine whether the grievance was arbitrable under the collective bargaining agreement.

5

**STANDARD OF REVIEW**

"We review de novo a district court's grant of summary judgment, applying the same legal standards as the district court." Alvarez v. Royal Atl. Dev., Inc., 610 F.3d 1253, 1263 (11th Cir. 2010). "We will affirm if, after construing the evidence in the light most favorable to the non-moving party, we find that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id. at 1263–64.

**DISCUSSION**

For Georgia-based complaints to compel arbitration under section 301 of the Labor-Management Relations Act there is a six-month statute of limitations. See Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp., 991 F.2d 1545, 1548 n.2 (11th Cir. 1993) ("For [section 301 suits to compel arbitration] arising under Georgia law we have also adopted a six[-]month statute of limitations.") (citing Samples v. Ryder Truck Lines, Inc., 755 F.2d 881, 888 (11th Cir. 1985)). "The time period to bring an action begins to run when one party unequivocally refuses to arbitrate the dispute." Id. Whether a party "unequivocally refuses to arbitrate" is a question of law. Id.

The union argues that the district court erred in concluding that BellSouth's October 1, 2018 and November 14, 2018 emails were unequivocal refusals to arbitrate the grievance. In particular, the union argues that BellSouth never

6

unequivocally refused to arbitrate because:    (1) the union never received an unequivocal refusal to arbitrate in writing; and (2) even if BellSouth's cancellation of the arbitration was an unequivocal refusal, "that refusal was rendered equivocal by later conduct showing [BellSouth] was willing to negotiate the merits and arbitrability" of the grievance.    We agree with the union that BellSouth never unequivocally refused to arbitrate.

First, the October 1, 2018 email from BellSouth to the union was not an unequivocal refusal to arbitrate.  The email said:

> As we discussed, it has come to my attention that [BellSouth] has raised a substantive arbitrability defense in this matter.  [Butler] appears to be challenging the calculation of his seniority date.  In [the collective bargaining agreement], the parties define "Seniority" to mean:

> "Term of Employment (TOE)/Net Credited Service (NCS) <u>as defined by the applicable Pension Plan</u>, or if no Pension Plan is applicable to an employee, then Seniority shall mean the length of service calculated as if the employee were covered by the Bargained Cash Balance program #2 of the AT&T Pension Benefit Plan."

> The Pension Plan falls within Article 19, and Article 19.04 provides

> "Nothing herein shall be construed to subject the Plans or their administration to the arbitration procedures of Article 23, but such matters may be subject to the grievance procedures of Article 21."

> In the grievance form [the union] took only the position that "Article 19.04 does not apply," without elaboration.  So I can evaluate the appropriate way to proceed, please let me know [the union]'s explanation why Article 19.04 does not apply.

7

In the October 1, 2018 email, BellSouth never said that it was not going to arbitrate the dispute. After stating its position on arbitration, it asked the union to explain why it believed the grievance was arbitrable. Debating the arbitrability of a grievance is not an unequivocal refusal to arbitrate. See Teamsters Local Union No. 783 v. Anheuser-Busch, Inc., 626 F.3d 256, 259–260 (6th Cir. 2010) ("A statement that a grievance is not arbitrable, which simultaneously requests additional information, does not amount to an unequivocal position that the employer will not arbitrate."). Even after sending the October 1, 2018 email, BellSouth didn't cancel the arbitration; it was still scheduled for the next month. Debating the arbitrability of the grievance and keeping the scheduled arbitration are not unequivocal refusals to arbitrate. Tellingly, on appeal, BellSouth does not defend the part of the district court's order finding the October 1, 2018 email to be an unequivocal refusal to arbitrate.

Second, the November 14, 2018 email from BellSouth to the arbitrator wasn't an unequivocal refusal to arbitrate because it left open the possibility of rescheduling arbitration in the future. The email said:

> The parties will not proceed with this arbitration scheduled for November 29. At this time, we do not need further dates, although [the union] or [BellSouth] will contact you if that changes. Any charges for this cancellation are [BellSouth]'s responsibility, so please send any bill to [BellSouth].

8

(emphasis added).  In the email, BellSouth cancelled the November arbitration but explained that it would contact the arbitrator if the parties needed a future date. Being open to a future arbitration date is not an unequivocal refusal to arbitrate.  See Atlas Air, Inc. v. Int'l Brotherhood of Teamsters, 943 F.3d 568, 583 (2d Cir. 2019) (concluding that a refusal to arbitrate was not unequivocal where discussions between the employer and the union "included the possibility of arbitration in the event that the negotiations and discussions were not successful").

AAA Plumbing is instructive.  There, an employer settled a dispute with its employee, but the employee's union discovered that the amount of the settlement was incorrect.  AAA Plumbing, 991 F.2d at 1547.  The union suggested that the parties go to arbitration to resolve the dispute.  Id.  The employer rejected the union's suggestion and wrote a letter saying:  "I'm sure you will agree that the matter is closed and it would be inappropriate to reopen it at this time."  Id. at 1548.  We concluded that the "[u]se of the phrase 'I'm sure you will agree,' indicate[d] that the letter was not an unequivocal refusal to arbitrate, but rather an attempt to persuade [the union]'s counsel that he had no basis for the suggestion that the parties should return to arbitration."  Id.  We explained that the parties' later discussions "provide[d] further support" for this conclusion because the parties continued to negotiate the dispute.  Id.  We said that when the union asked the company for more information to determine how far apart the parties were, the employer, "[r]ather than

9

respond[ing] that the matter was closed, . . . sent the [union] information concerning [the employee]'s wages and the settlement." Id. We explained that this showed that "neither party had locked itself into one position." Id. We concluded that the employer only unequivocally refused to arbitrate when it told the union that it "respectfully decline[d] [the union's] request to return to the [a]rbitrator." Id. at 1548–49. Like the letter in AAA Plumbing, the November 14, 2018 email left open the possibility of arbitration if the parties couldn't resolve the grievance. The use of the phrases "[a]t this time" and "if that changes" showed that the parties could return to arbitration in the future if their discussions were unsuccessful.

And, like the follow-up discussions in AAA Plumbing, the conversations between BellSouth and the union after November 14, 2018 "provide[] further support" that BellSouth did not unequivocally refuse to arbitrate. See id. at 1548. On January 15, 2019, the union emailed BellSouth a timeline of events pertaining to the grievance, outlining the union's position and the basis for the grievance. BellSouth responded by suggesting a meeting to discuss the grievance. Then, on January 24, 2019, BellSouth and the union met and explained "their respective positions on the arbitrability issue and the merits of the grievance."[1] After the

---

[1] BellSouth disputes this "to the extent that [the union] implies that [BellSouth] ever indicated after cancelling the arbitration on November 14, 2018 that BellSouth's position on the substantive non-arbitrability of the [g]rievance was not final." But at the summary judgment stage, we must view this evidence, and make all inferences from this evidence, in the light most favorable to the union. See Alvarez, 610 F.3d at 1263.

10

meeting, the parties agreed to "speak with [their] respective clients about the case and continue [their] discussions [about the arbitrability issue and the merits of the grievance] afterward." On February 20, 2019, the union emailed BellSouth asking for an update on the "status of [the] [B]utler arbitrability issue." BellSouth responded it was "waiting on . . . the pension answer on Butler's service date." Finally, on March 19, 2019, the union again asked BellSouth for an update on BellSouth's "position regarding arbitrability of [the] seniority issue in the Butler grievance." This time, BellSouth responded it would "follow back up," but it didn't "believe [there was] any chance of changing the stance on substantive arbitrability." These post-November 14 discussions showed that "neither party had locked itself into one position." See id.; see also Int'l Union v. Cummins, 434 F.3d 478, 485 (6th Cir. 2006) ("The applicable standard requires that the refusal be unequivocal, which implies that any negotiation must occur before the company refuses to arbitrate and the statute of limitations begins to run. . . . Although the labor laws encourage the parties to 'listen' to each other, the unequivocal refusal to arbitrate required by the caselaw suggests that the employer must essentially determine that negotiation or persuasion is not feasible before the statute of limitations will begin to run."); Fed'n of Westinghouse Indep. Salaried Unions v. Westinghouse Elec. Corp., 736 F.2d 896, 898 (3d Cir. 1984) (concluding that a refusal to arbitrate was not unequivocal when employer continued to negotiate arbitrability).

11

Because the October 1, 2018 and November 14, 2018 emails were not unequivocal refusals to arbitrate, the district court erred in finding that the statute of limitations had run on the union's complaint.  Still, BellSouth urges us to affirm summary judgment because, even if the statute of limitations had not run, the grievance was not arbitrable under the collective bargaining agreement.  Because the district court didn't reach this issue, we think it makes sense to remand to the district court to address the arbitrability of the grievance in the first instance.  See, e.g., Bartholomew v. AGL Resources, Inc., 361 F.3d 1333, 1341 n.5 (11th Cir. 2004) ("Because the district court did not address [the defendants'] argument in the first instance, we decline to do so here.").  Our work is better when we have the benefit of the district court's wisdom, especially when it comes to thorny contractual issues like those presented here.

## CONCLUSION

For these reasons, we conclude that the union's complaint to compel arbitration was timely filed.  Thus, we **VACATE** the district court's summary judgment and **REMAND** to the district court to decide the remaining issues in the parties' summary judgment motions.

**VACATED AND REMANDED.**

12